UNITED STATES of America, Appellee,

v.

Faith Annette LONG, Appellant.

UNITED STATES of America, Appellee,

v.

Garrett James BARRY, Appellant.

Nos. 89–5126, 89–5134.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1989.

Decided April 16, 1990.

John W. Lundquist and Bruce H. Hanley, Minneapolis, Minn., for appellants.

Jon M. Hopeman, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and LARSON, District Judge.[*]

LAY, Chief Judge.

Faith Annette Long and Garrett James Barry appeal their convictions arising out of their scheme to steal and sell blank airline tickets. They were convicted of trafficking stolen property and conspiracy, in violation of 18 U.S.C. §§ 2315 and 371 (1988). They also were convicted of perjury, with Long's perjury conviction coming under 18 U.S.C. § 1621 (1988), and Barry's under to 18 U.S.C. § 1623 (1988). We reject their claims of error and affirm on all counts.

BACKGROUND

We set forth many of the facts in this case in our previous opinion upholding the district court's suppression order. *See United States v. Barry*, 853 F.2d 1479 (8th Cir.1988). We repeat only those facts essential to frame the issues presented here.

The FBI enlisted Barry's former employee, Arlene Anderson, to work as an informant in an undercover investigation of Long and Barry. Through Anderson the FBI arranged the ticket sales leading to the arrest of Long and Barry.

On the day of the arrests, Anderson and Barry arrived at a downtown hotel, and Anderson went to obtain money from her "buyer," actually the FBI. The FBI had marked the money with fluorescent powder that showed under black light. Barry had instructed her to take the money into the hotel elevator and hand it over when the doors opened and she saw someone she trusted. The FBI had told her to speak a code word into her microphone when she handed over the money. The elevator doors opened, Anderson saw Barry and gave him the money, but she forgot to speak the code word.

Upon learning of the mistake, the FBI began a frantic search of the hotel. One security guard reported seeing Barry meet with a dark-haired woman. Finally, about 15 minutes later, FBI agents spotted Barry about to enter his locked car. They arrested him and searched him and his car, but did not find the money. They took from his car a key to an airport locker, the contents of which were later suppressed. They also took other items later offered into evidence, including rubber gloves, tape, and a letter to a federal district judge.

About the same time as the hotel search, FBI agents discovered Long in a shopping mall near some lockers they suspected to contain stolen tickets. They interrogated her there, and she turned over to the agents the key to a locker hiding tickets.

Back downtown the search for the money continued several more hours. Using a key they had taken from Barry, the agents identified Barry's van in a ramp near the hotel. They searched the van without a warrant, but did not find the money. They did, however, find a tablecloth with fluorescent powder on it. Barry later told the FBI the money was hidden in a false compartment attached to the underside of the van's oil pan. In exchange for his revealing this information, the FBI agreed not to use the location of the money against him.

Long and Barry raise numerous claims of error. Long asserts that (1) her speedy trial rights were violated; (2) the court should have severed her trial from Barry's; (3) the court should have suppressed the statements she gave to the FBI at the shopping mall along with the evidence

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

seized as a result of the statements; (4) the court admitted other improper evidence; (5) her perjury count was misjoined with the other counts in violation of Fed.R.Crim.P. 8(a); and (6) her false statement was not under oath and was not material as a matter of law.

Barry asserts that (1) the searches of his car and van violated the fourth amendment; (2) admission of Long's hearsay statements violated his sixth amendment right to confrontation; and (3) the evidence was insufficient to sustain his perjury conviction and one count of his conviction under 18 U.S.C. § 2315.

■■■■ Upon careful review of the record we find that the only claims with enough substance to warrant discussion are Long's Speedy Trial Act and severance claims, and Barry's fourth and sixth amendment claims.[1]

## DISCUSSION

### A. *Speedy Trial Act*

Under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1988) (The Act), an indict-ment must be filed within 30 days after the defendant is arrested or charged by summons with a crime. 18 U.S.C. § 3161(b). Long was arrested on October 9, 1986. The government dismissed the complaint against her on November 7 and then filed an indictment on November 18. Long argues that because the indictment on November 18 came more than 30 days after the arrest on October 9, the indictment should have been dismissed.

■■■■ The well-settled rule in this and other circuits holds that when the government drops a complaint but then later brings a new complaint or indictment on the same charge, the 30–day period runs from the second complaint or indictment. *United States v. Abernathy,* 688 F.2d 576, 579 (8th Cir.1982); *United States v. Hutchins,* 818 F.2d 322, 325–26 (5th Cir.), *cert. denied,* 484 U.S. 1041, 108 S.Ct. 772, 98 L.Ed.2d 859 (1987); *United States v. Puett,* 735 F.2d 1331, 1333–34 (11th Cir.1984); *United States v. Samples,* 713 F.2d 298, 302–03 (7th Cir.1983); *United States v. Bit-*

---

**1.** We briefly point out the reasons for rejecting Long and Barry's other arguments:

(a) Long's argument that her trial should have been severed from Barry's because of a violation of Fed.R.Evid. 801(d)(2)(E) overlooks that co-conspirator statements may be admitted after a preponderance of evidence shows a conspiracy. Conviction of conspiracy is not required. *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Long's argument that severance was required because her defense was incompatible with Barry's is not borne out by the record.

(b) Long's argument that the whole of her statement at the shopping mall should have been suppressed because she was in custody from the beginning fails because the interrogation began as a legitimate *Terry* stop, *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and the court was not clearly erroneous in determining that it only later ripened into custody. Her arguments for suppression of the fruits of the interrogation and her later questioning after her arrest ignore the controlling decisions in *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1984), and *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). Finally, our decision in *United States v. Carter,* 884 F.2d 368 (8th Cir.1989), upon which Long relies, is distinguishable on its facts.

(c) Long's argument that the court should have granted her motion for mistrial after the key witness mentioned taking a polygraph test does not prove an abuse of discretion. The witness' statement was a surprise answer given in response to an unrelated question. The court's treatment of it was not improper or prejudicial.

(d) Long's argument that the court improperly admitted certain business records is wholly without support in the record.

(e) Long's argument that her perjury conviction was misjoined flies in the face of the record showing the extensive overlap in the proof of this count and the other counts. Her argument that her false statement was not under oath is incorrect as a matter of law, and her claim that the statement was immaterial is frivolous.

(f) Long's argument that the delay in this court's decision on the interlocutory appeal violated her constitutional right to a speedy trial under *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), fails on several elements of the *Barker* test.

(g) Barry's argument that his sworn statement before Judge Renner was not a statement in a proceeding before a court for purposes of his perjury conviction is frivolous.

(h) Barry's argument that the value of the tickets in one count of his conviction was less than the required $5,000 dollars ignores the plain language of the statute defining value. Similar arguments have been rejected by other circuits. *See United States v. Jones,* 797 F.2d 184 (4th Cir.1986).

*tle,* 699 F.2d 1201, 1205–06 (D.C.Cir.1983). We need not repeat the well-explained rationale for this rule. *See United States v. Puett,* 735 F.2d at 1333–34; *United States v. Bittle,* 699 F.2d at 1205–06.[2] Thus, the time between the arrest and the dismissal of the first complaint is not counted, nor is the time between the dismissal and the second indictment. The 30 day rule was not violated.

The Speedy Trial Act also requires trial to begin within 70 days after indictment, 18 U.S.C. § 3161(c), not counting time spent in certain proceedings. *See* 18 U.S.C. §§ 3161(d), (h). Long asserts a violation of this 70–day rule. Reviewing this claim involves detailed examination of the time periods that should be counted or excluded from calculation of the 70 days.

Long was indicted on November 18, 1986, and arraigned on November 19, 1986. The count of 70 days therefore began on November 20, 1986. *See United States v. Robinson,* 767 F.2d 765, 769 (11th Cir.1985) (70 day limit triggered by arraignment and begins to run day after arraignment). The defendants filed pretrial motions on December 1, 1986. The Act excludes from the count "[a]ny period of delay resulting from * * * any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). The 70–day count therefore stopped on December 1, having elapsed 11 days.

The parties dispute when the clock restarted. The Supreme Court has interpreted language of section 3161(h)(1)(F) to mean that when a pretrial motion requires a hearing, the excludable period runs from the filing of the motions to the date of the hearing, or until the date when the parties have submitted any additional materials requested by the court. When the motions require no hearing, the excludable period runs from the date of filing until the court receives all the parties' submissions regarding the motions. *Henderson v. United States,* 476 U.S. 321, 328–31, 106 S.Ct. 1871, 1875–77, 90 L.Ed.2d 299 (1986). Following this period excluded under section 3161(h)(1)(F), the Act will allow exclusion of up to 30 more days for the court to consider the motions. 18 U.S.C. § 3161(h)(1)(J); *see also, Henderson,* 476 U.S. at 328–31, 106 S.Ct. at 1875–77.

The magistrate held hearings on the motions December 3, 4, and 12, 1986. He requested the parties to file additional memoranda by December 30, 1986, and filed a report and recommendation to the district court on January 16, 1987. The report and recommendation provided that the parties could file objections to it by January 30, 1987.

Long contends that the excludable period under section 3161(h)(1)(F) ended, and the 30–day consideration period of section 3161(h)(1)(J) began, on December 30, the due date for additional memoranda to be filed with the magistrate following the hearing. The government asserts that the 30–day advisement period began after January 30, the due date for the parties to file with the district court their objections to the magistrate's report and recommendation. The government argues that because the magistrate's report and recommendation is not an order disposing of the motions, the exclusion period under section 3161(h)(1)(F) should continue until the district court has all materials it needs to consider and rule on the motions, including the magistrate's report and recommendation.

■ We disagree. Section 3161(h)(1)(F) refers to "the prompt disposition" of a

---

**2.** Long mistakenly relies on *United States v. Leone,* 823 F.2d 246 (8th Cir.1987), and *United States v. Dennis,* 625 F.2d 782 (8th Cir.1980). These cases state the rule that when an *indictment*—not a complaint—is dismissed at the motion of the government and a second charge is filed for the same offense, the time between the dismissal and the second charge is excluded but not the time before the dismissal. This rule derives from a different statutory section than the rule in this case. *Compare* 18 U.S.C. § 3161(h)(6) (applicable when indictment is dismissed upon motion of government), *with* 18 U.S.C. § 3161(d) (applicable when indictment is dismissed upon motion of defendant, or charge in complaint is dismissed). In this case the government dismissed the complaint and then filed an indictment. Under these facts only section 3161(d) is applicable.

motion. It does not state that "disposition" means an order of the district court. The government's reading would provide the magistrate a blank check to consume unlimited time between the hearing or receipt of all final submissions, and the issuance of his report and recommendation. We see no reason to exempt magistrates from the statutory limit of 30 excludable days for taking a motion under advisement after receiving all materials needed to decide it. All memoranda were filed with the magistrate on December 30, 1986, and he had 30 excludable days from then to rule. He used only 16 to issue his report and recommendation, and thus the 70–day count did not advance.

█ The issuance of the report and recommendation began a new excludable period under section 3161(h)(1)(F). The magistrate is required to file the report and recommendation with the district court, and the parties must file their objections to it within 10 days. *See* 28 U.S.C. § 636(b)(1) (1982). The district court is required to rule on any objections. The filing of the report and recommendation, therefore, in essence serves to re-file the motions, together with the magistrate's study of them, with the district court. Under section 3161(h)(1)(F), this filing tolls the 70–

day count until the district court holds a hearing or has all the submissions it needs to rule on the motions.[3] In this case the district court had received all the parties' objections to the report and recommendation on January 30, 1987. The court's 30 day advisement period therefore would have begun January 31, 1987.

█ Further complications arose, however, with the return of a superseding indictment on January 28, 1987. Long was arraigned on this indictment on February 2, 1987. On February 6, 1987, she renewed her pending motions and filed an additional motion to dismiss, raising issues not raised in her original motions. The return of a superseding indictment did not re-start the 70–day clock.[4] Nevertheless, the time between arraignment on the new indictment and the renewal of the defense motions arguably should be included in the 70–day count.[5] We need not decide this issue, however, because the three day period, even if included, would not put the count over 70 days in this case.

█ Because Long's motions on February 6, 1987, included a new motion not previously raised, the filing started a new period excludable pursuant to section 3161(h)(1)(F).[6] The magistrate took Long's

3. The Eleventh Circuit followed a slightly different approach in *United States v. Robinson*, 767 F.2d 765 (11th Cir.1985). There the court also concluded that the period excludable under section 3161(h)(1)(F) ended on the issuance of the magistrate's report and recommendation. However, the court held that a new excludable period began when the parties filed with the district court their objections to the magistrate's report and recommendation, and not when the report and recommendation was filed with the district court. While we believe this approach would be correct if the magistrate's report and recommendation were instead an order, we think the court's analysis fails to consider that a report and recommendation is automatically filed with the district court, which in turn is required to make a *de novo* determination on the issues to which a party objects. 28 U.S.C. § 636(b)(1).

4. A superseding indictment is an indictment filed without the dismissal of a preceding indictment. *See United States v. Rojas–Contreras*, 474 U.S. 231, 237, 106 S.Ct. 555, 558, 88 L.Ed.2d 537 (1985) (Blackmun, J., concurring). Because the Act does not re-start the 70 day clock when an indictment is dismissed and a second returned,

but merely tolls the time between dismissal of the first and arraignment on the second, 18 U.S.C. § 3161(d)(1), it would make no sense to re-start the clock upon the return of a superseding indictment without dismissal of the first.

5. Under section 3161(h)(1)(J), the 30 day period of exclusion applies to the time when the motion "is actually under advisement by the court." Arguably, upon the return of a superseding indictment the pending motions are not actually under advisement until the defendant determines whether the motions still apply to the superseding indictment, and renews the motions.

6. Because Long's filing included a new motion, we need not consider whether a renewal of pending motions after a superseding indictment automatically re-starts the 30–day advisement period, whether the 30–day advisement period continues to run uninterrupted despite the superseding indictment, or whether the 30–day period continues to run from the original starting point, while tolling the period from arraignment on the new indictment to renewal of the motions.

new motion under advisement and issued a supplementary report and recommendation on February 19, 1987. Long filed timely objections to the supplementary report and recommendation on March 2, 1987. Pursuant to our holding above, the period from February 6 to March 2, inclusive, is excludable time under section 3161(h)(1)(F). A 30–day period of excludable time for the court to consider the magistrate's report and Long's objections thereto began March 3, 1987. The court took only two days, however, ruling on the motions on March 4, 1987. These two days are excludable. On March 5, 1987, the government moved for a stay in the proceedings pending its interlocutory appeal of the court's adverse ruling. The court granted this motion on March 6. These two days also are excludable.

In its March 6 order the court purported to exclude for the purposes of the Speedy Trial Act all time from that day until resolution of the interlocutory appeal. The government filed the interlocutory appeal on April 4, 1987.

■ Section 3161(h)(1)(E) excludes from the speedy trial clock "delay resulting from an interlocutory appeal." The excludable period under this provision commences with the filing of the appeal, in this case April 4, 1987. *United States v. Pelfrey,* 822 F.2d 628, 635 (6th Cir.1987). The government argues that nevertheless the excludable period should include the time from March 6 to April 4 because the district court's March 6 order declared that all time from that date to the end of the interlocutory appeal was excludable.

■ Section 3161(h)(8) allows the court to exclude time from the Speedy Trial Act's count upon its own motion or that of the parties. However, the judge must set forth findings why the exclusion will serve the ends of justice. In this case the judge made no such explicit findings.

The government cites authority from this circuit holding that the court need not follow section 3161(h)(8) to the letter if the facts of the case make it self-evident that the ends of justice would be served by the continuance. *United States v. Lewis,* 759 F.2d 1316, 1351–52 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985). In *Lewis,* however, the district court did state the bare conclusion required by the statute, i.e., that " '[t]he ends of justice served by granting such continuance outweigh the best interests of the public and the defendant in a speedy trial.' " 759 F.2d at 1352 (quoting district court order). Moreover, the opinion does not state what were the self-evident facts supporting that conclusion.

In this case we decline the government's invitation to discard the plain language of the statute. We do not think it self-evident that allowing the government excludable time to decide whether to file an interlocutory appeal of an exclusionary order serves the ends of justice to an extent outweighing the public's and defendant's interest in a speedy trial. We therefore include the 27 days from March 6, 1987, to April 4, 1987, in the calculation of the 70 days.

■ The mandate from this court following disposition of the appeal was issued September 29, 1988, and was filed with the clerk of the district court on October 3, 1988. Long argues that any period excluded for the interlocutory appeal should end the date the mandate is issued, or September 29, 1988. The government urges the relevant date is the date the mandate was received by the clerk of the district court, October 3, 1988. We agree with the government. The district court is unable to proceed to trial until it has received the appellate court's mandate.

■ Long argues we should not exclude the whole period from April 4, 1987, to October 3, 1988, because the length of time consumed in the interlocutory appeal was unreasonable. The Supreme Court's analysis in *Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), guides us to reject this argument. In *Henderson,* the Court analyzed whether the period excluded under section 3161(h)(1)(F) for pretrial motions should be limited by a reasonableness requirement. The court noted that one of the exclusionary provisions, section 3161(h)(7), contained an express requirement that the length of

time be "reasonable." The rest of the exclusions under 3161(h) did not. The Court concluded that the difference between 3161(h)(7) and 3161(h)(1)–(6) "is a strong indication that the exclusion of the periods defined in (1)–(6) was intended to be automatic." 476 U.S. at 327, 106 S.Ct. at 1875 (quotation omitted). We therefore exclude the time from the filing of the interlocutory appeal, on April 4, 1987, to the district court's receipt of its mandate on October 3, 1988.

After receiving the mandate from this court on October 3, the district court set the case for trial. The government filed additional motions on October 24, and Long filed a motion on October 27. The court ruled on the last of these motions on November 2, and trial commenced on that date. The 20 days from October 3 through October 23, 1988, are not excludable, but the period from October 24 through November 2, 1988, is excludable.

Summing up the nonexcludable time, we count 11 days from November 19 through December 1, 1986; 27 days from March 6 to April 4, 1987; and 20 days from October 3 to 24, 1988. The total is 58 days. Even if we were to add the three days between February 2 and 6, 1987, the period from the return of the superseding indictment to the renewal of the pending motions, we would reach only 61 days. The Speedy Trial Act was not violated.

B. *Search of Barry's Vehicles*

Barry alleges the warrantless search of his car and van violated the fourth amendment. We disagree.

The Supreme Court has made clear that a warrant is not required to search a vehicle if it "is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes." *California v. Carney,* 471 U.S. 386, 392, 105 S.Ct. 2066, 2070, 85 L.Ed.2d 406 (1985). Although a warrant may not be required, the authorities must have probable cause to search the vehicle. *Id.* at 395, 105 S.Ct. at 2071; *see also, United States v. Martin,* 806 F.2d 204 (8th Cir.1986) (warrantless search of vehicle parked in front of house upheld when officer had probable cause to believe objects he saw on front seat were machine gun parts belonging to suspect who lived in the house).

Barry's car clearly was parked in a place not regularly used for residential purposes, and the FBI had probable cause to search it. Barry was arrested as he prepared to unlock his car. At that time the FBI agents knew he had received the marked money, but he had eluded their surveillance for about fifteen minutes and he did not then have the money on his person. Barry's car was in a different place than when he first arrived at the hotel. We find the combination of these facts gave the FBI probable cause to suspect that the car might contain the money or other evidence leading to it.

Barry insists, however, that the FBI could have seized and secured his car while awaiting a warrant without any risk that evidence inside it would be lost. The FBI had him in custody, and agents were available at the scene to watch the car. The Supreme Court has stated plainly, however, that law enforcement authorities need not seize and await a warrant to search a vehicle pulled over or found in a nonresidential area if probable cause exists to search it immediately. *See Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970) ("For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."); *see also United States v. Ross,* 456 U.S. 798, 807 n. 9, 102 S.Ct. 2157, 2163 n. 9, 72 L.Ed.2d 572 (1982) (explaining *Chambers* rule).

Moreover, the agents had reason to fear that delaying the search of the car might allow the money to escape. Barry was seen meeting a dark-haired woman. If the money was not in the car, it might be in transport from the scene. The loss of time

**1278**

waiting for a warrant would hinder attempts to find the escaping courier. The search of the car did not violate the fourth amendment.

 The same analysis applies to the search of Barry's van. The FBI found the key to the van while searching Barry after his arrest, and they located the van by trying the key in the locks of every van parked in a ramp near the hotel. Before searching the van, the agents determined its license plates were registered to a travel agency connected with Barry.

Applying the standards of *Carney*, the van was "found stationary in a place not regularly used for residential purposes." The FBI knew it was connected to Barry, and it was in a place Barry could have gone during the fifteen minutes he eluded FBI surveillance. The FBI also knew Barry had received and disposed of the money during the fifteen minute period, and they knew he had the key to the van during that time. At the time of the van search, the FBI still had not found the money. On these facts we find the FBI had probable cause to suspect that the van might contain the money or evidence leading to it.[7] In addition, an unknown, dark-haired woman was still at large, and the van appeared capable of being moved. The search of the van did not violate the fourth amendment.

Finally, even if we were to find fourth amendment violations here, admitting the evidence clearly would be harmless error. None of the evidence seized from the car and van—tape, rubber gloves, a letter to a judge, and a tablecloth with fluorescent powder—was important to Barry's conviction, and the other evidence against him was overwhelming.

C. *Errors Claimed to Arise from Joint Trial*

During her interrogation by the FBI at the shopping mall, Long stated that Barry had instructed her to go to the mall, pick up a key, move a package from one locker to another, and stay there to watch for suspicious activity. Long argued this statement was important to her defense that she acted merely on the instructions of Barry, her employer, and not knowing she was participating in an illegal scheme. Long herself did not testify, but she sought to have the statement put in evidence through cross-examination of the FBI interrogator. Because this hearsay statement would implicate Barry without allowing him the opportunity to cross-examine Long, the court ordered the FBI agent to substitute the pronoun "someone" in place of Barry's name. As a result the agent testified Long said "someone" instructed her to do what she did at the mall.

Long argues that the redaction of her statement made a mockery of her defense that she was merely Barry's dupe and pawn. She insists that the district court violated the rule of completeness by not allowing her statement in its entirety. Barry also objects to the redacted testimony. He argues that cross-examination of the agent by Long's counsel made very plain that the "someone" was in fact Barry. He therefore asserts he was denied his constitutional right to confront Long about the statement she made against him. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (admission of codefendant's post-arrest confession implicating defendant violates defendant's sixth amendment right to confront witnesses against him). Both defendants urge that the district court erred by not granting them separate trials.

Whether to sever trial of multiple defendants is a matter within the discretion of the district court. We will reverse only upon abuse of discretion resulting in clear prejudice. *United States v. Kaminski*, 692 F.2d 505, 522 (8th Cir.1982).

**1. Rule of Completeness**

With respect to Long's claim, the rule of completeness holds that when a confession is introduced, the defendant has a right to

---

7. Barry later informed the FBI that the still undiscovered money was hidden in a plastic container attached to the underside of the van.

As mentioned earlier, the FBI agreed not to use this information against Barry.

have all, and not just part of it, put into evidence. *Kaminski*, 692 F.2d at 522. However, when one defendant's confession is redacted to avoid implicating the other defendant, "the rule of completeness is violated, and severance required, only where admission of the statement in its edited form distorts the meaning of the statement or excludes information substantially exculpatory of the declarant." *Id.*

 Long has proven no distortion here. Her counsel skillfully cross-examined the FBI agent about her statement in a way that made clear that the "someone" was Barry. The following excerpts illustrate:

> [Cross-examination of FBI agent by Long's counsel] Q: So if I understand it right, Miss Long told you that someone instructed her to be out there?
>
> A: That's correct.
>
> Q: She actually told you a name of the person that told her to be out there and you know that name now?
>
> A: Yes, sir, I do.
>
> \* \* \* \* \* \*
>
> Q: [She told you she] saw Arlene Anderson drive up with someone, is that right?
>
> A: That's correct.
>
> Q: And is this the same someone that gave the instructions?
>
> A: Yes.
>
> Q: And it's the someone that gave Miss Long the instruction to be there and to watch as Miss Anderson arrived with this other person, is that correct?
>
> A: Yes, it is.
>
> \* \* \* \* \* \*
>
> Q: And then pursuant to the instructions from the mystery person, she was watching the lockers, is that right?
>
> A: She was to stay in that area and make a note of any unusual observations.
>
> Q: And she didn't use the word "mystery person," did she?
>
> A: In terms of who she got the instructions from?
>
> Q: Right.

> A: No, she didn't.
>
> Q: And in fact, she told you that she had been at some meetings with Arlene and this other person recently, right?
>
> \* \* \* \* \* \*
>
> A: She had a conversation with this person and Arlene before, yes, part of that time.

Other testimony connected Arlene Anderson with Barry in the meetings mentioned by the FBI agent. This record therefore leaves no doubt that the jury fully understood Long's claim that she acted on Barry's instructions. The rule of completeness is not violated when the meaning of the redacted statement becomes clear despite the redaction.

Even assuming the statement lost some exculpatory effect through its redaction, the redaction did not cause sufficient prejudice to warrant reversal. The record is replete with other evidence of Long's presence at, knowledge of, and participation in the fraudulent ticket writing and distribution.

### 2. Bruton Violation

 Barry argues that because cross-examination by Long's counsel made clear that Barry was the "someone" in the redacted hearsay statement, admission of the statement infringed his sixth amendment right to confront the witness against him, as explained in *Bruton v. United States.* The Supreme Court has held that the *Bruton* rule is not violated merely because other evidence allows the jury to infer a link between a co-defendant's redacted confession and the defendant. *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Provided the redacted confession itself contains no reference to the defendant, an instruction to the jury to avoid inferring any link between the statement and the defendant should suffice to protect the defendant's sixth amendment rights. *Id.* at 211, 107 S.Ct. at 1709.

In *Richardson,* however, the redacted confession contained no neutral pronoun like "someone" as a replacement for the defendant's name. Rather, the redaction

eliminated all reference to the involvement of any other person. The Court expressly reserved judgment on whether a redaction using a pronoun would violate the sixth amendment if other evidence allowed the jury to infer who was the "someone." 481 U.S. at 211 n. 5, 107 S.Ct. at 1709 n. 5.

We encountered this reserved question in *United States v. Garcia*, 836 F.2d 385 (8th Cir.1987). We distinguished cases where presentation of the redacted statement draws the jury's attention to the fact that a name was omitted and invites the jury to fill in the blank, and cases where the redacted statement does not invite speculation. 836 F.2d at 390–91 (citing *Clark v. Maggio*, 737 F.2d 471 (5th Cir.1984), *cert. denied*, 470 U.S. 1055, 105 S.Ct. 1761, 84 L.Ed.2d 823 (1985), as an example of a case where jury was invited to fill in the blank); *see also United States v. Alvarado*, 882 F.2d 645, 651–53 (2d Cir.1989) (contrasting case that did not invite jury speculation from one that did), *cert. denied*, — U.S. ——, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990); *United States v. Bennett*, 848 F.2d 1134, 1142 (11th Cir.1988) (prosecutor invited speculation). Because the statement in *Garcia* did not invite speculation, we upheld the district court's admission of the redacted statement.

■ In the present case speculation was invited. As the excerpted portions of the transcript plainly indicate, Long's counsel led the jury straight to the conclusion that "someone" referred to Barry. Long never took the stand for Barry to cross-examine about her statement.

■ Nevertheless, violations of the *Bruton* rule are subject to the harmless error standard. *Garcia*, 836 F.2d at 391. We find that the *Bruton* error in this case was harmless. The offending statement served to connect Barry with Long and, therefore, with the stolen tickets Long guarded in the shopping center locker. Even without this statement, however, ample evidence connected Barry with those tickets and the scheme to steal and market them. Arlene Anderson testified that Barry took her to view the tickets in the locker before going downtown to collect the mon-

ey for them. The other evidence showing Barry's involvement in the scheme was overwhelming. Barry suffered no prejudice by the *Bruton* error.

We hold that the convictions of Barry and Long should be affirmed.