**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 9 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MARIA LOUISA MORA,

    Defendant-Appellant.

No. 97-4093

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 96-CR-13-C)**

---

Wayne T. Dance, Assistant United States Attorney (Scott M. Matheson, Jr., United States Attorney, and Brooke C. Wells, Assistant United States Attorney, with him on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

Stephen R. McCaughey of McCaughey & Metos, Salt Lake City, Utah, for Defendant-Appellant.

---

Before **PORFILIO, HOLLOWAY** and **HENRY,** Circuit Judges.

---

**HOLLOWAY,** Circuit Judge.

---

    Defendant-Appellant, Maria Louisa Mora, entered a conditional plea of guilty of possessing with intent to distribute heroin, reserving her right to appeal the district court's denial of her pre-trial motions to suppress and to dismiss for violation of the Speedy Trial

Act, 18 U.S.C. § 3161, et seq. Following entry of her conviction and the judgment sentencing Mora to the custody of the Bureau of Prisons, this appeal was timely filed. Mora asserts that the district court erred in (1) denying her motion to dismiss on speedy trial grounds; (2) improperly reviewing the magistrate's report and recommendation; and (3) denying her motion to suppress evidence. We have jurisdiction by virtue of 28 U.S.C. § 1291, and we reverse in part, vacate in part, and remand.

## I

On January 8, 1996, agents with the Drug Enforcement Administration (DEA) Metro Narcotics Task Force in Salt Lake City, Utah, were alerted by California police officials that Mora was flying from Los Angeles to Salt Lake International Airport. Officer Dahl testified that on that day the task force received information from a detective in Long Beach, California, that a female hispanic by the name of Maria Louisa Mora would be arriving in Salt Lake City from Los Angeles on either a Southwest or Delta Airlines flight, and she would be "body-packing" a quantity of heroin. Aplt. App. at 71-72, 106. Officer Dahl and two other officers first surveyed people deplaning the Delta flight, and they briefly questioned one female who matched the general description. Id. at 73. Upon discovering that the person they questioned was not Mora, the officers proceeded to the gate at which the Southwest flight was scheduled to arrive. Id.

Again, the officers noticed a potential suspect deplane, but they did not take immediate action. Id. The officers continued to observe the suspect, who they later learned

2

was Mora, as she walked towards the baggage claim area. Id. at 74. At that point, after Mora was out of sight, the officers received further, more detailed information through police channels, and, upon determining that Mora matched the description, the officers attempted to locate her. Id. at 74-75, 95. The officers spotted Mora leaving the terminal and they approached her as she stood outside. Id. at 74-75. The magistrate judge found that upon reaching Mora, Officer Dahl identified herself as a police officer, told Mora that she was not under arrest, and that she was free to leave (which Mora disputes), and asked to speak to her. Id. at 75. Discovering that Mora did not understand English, Dahl motioned for Officer Judd, who speaks Spanish. Id. at 76.

Officer Judd approached Mora, identified the officers in Spanish as airport narcotics police, and asked her if she understood. Id. at 98-99. Mora indicated that she did. Judd testified that he told Mora she was free to leave, but Mora testified that she was never advised by Judd that she was free to go. Id. at 99, 154. Judd told Mora he would like to speak with her for a moment. Mora agreed to talk with the officers, and she asked if there was a problem, to which Judd answered no. Id. at 99. Officer Judd asked for identification, and Mora produced a card issued by California and bearing the name of Maria Louisa Mora Madrigal. Id. at 99-100. Judd testified that after returning her identification card, he asked Mora if she had any drugs or large amounts of cash with her, to which she responded no. Id. at 100, 163. Mora testified that her identification was never returned by Judd. Id. at 138. Officer Judd requested to search her bags, and after advising her once more that there was

3

no problem, she consented. Id. at 101. Finding nothing related to narcotics in her bags, Officer Judd asked Mora if she would permit Officer Dahl to search her clothing, and Mora consented. Id.

Officer Judd motioned for Officer Dahl, advised her of Mora's consent, and Officer Dahl proceeded with the search. Id. at 102. As Officer Dahl conducted the pat-down search and approached her waist, Mora stepped away and indicated that she wanted to go to the bathroom to complete the search. Id. at 78, 102. The officers escorted Mora inside the terminal and headed in the direction of the restrooms. Id. at 102. The first restroom they found was closed and they proceeded toward a different restroom further inside the terminal. Id. at 103. Mora, however, began walking toward a public phone bank. Id. Officer Judd asked if Mora would permit Officer Dahl to complete the search prior to making her phone call. Id. Mora responded that she did not want to proceed with the search prior to using the phone. Id. at 104.

Officer Judd then advised Mora that they had received information that she was transporting drugs and that, if the information was correct, she needed to surrender them. Id. Mora stood silent, at which point Officer Whittaker addressed her in Spanish, asking her, "you have heroin, true?" Id. at 104-105. Mora paused, lowered her head, and said "si." Id. at 105, 126. The officers asked Mora to go into the restroom and produce the contraband. Id. at 105. Officer Whittaker asked Officer Dahl to accompany Mora into the restroom to retrieve the substance. Id. at 79. Once inside the restroom, Mora pulled a baseball size

4

object containing heroin from the crotch area of her pants and surrendered it to Officer Dahl. Id. at 79, 106. Immediately after exiting the restroom, the officers placed Mora under arrest. Id. at 80.

## II

On January 10, 1996, Mora was charged in a one count indictment alleging possession of heroin, in violation of 21 U.S.C. § 841(a)(1), and she had her first appearance and arraignment on January 11. Aplt. App. at 5, 56. Trial was set for March 5, 1996. Id. at 1. A superseding indictment was subsequently filed on January 24, charging Mora with possession with intent to distribute in excess of 100 grams of heroin. Id. at 5. On January 24 Mora filed a motion to suppress, and the matter was referred to a magistrate judge on January 31 pursuant to 28 U.S.C. § 636(b)(1)(B). Id. at 5, 56. A suppression hearing was held before the magistrate on February 27. Id. at 6. Supplemental briefs were ordered by the magistrate on March 7, which Mora filed on March 20 and the government filed on April 9. Id. at 6, 174. On May 1, approximately two months beyond the original trial date, the magistrate ordered the trial continued without setting a new trial date, finding that the ends of justice would best be served if the trial date was continued in order to allow the parties to file written memoranda addressing Mora's motion to suppress. Id. at 1-2. This order also purported to stay the running of time under the Speedy Trial Act, pursuant to 18 U.S.C. §§ 3161(h)(1)(F), (J), and (h)(8)(A). Id.

The record shows no further actions in Mora's case until the magistrate entered a

report and recommendation on January 31, 1997, recommending that Mora's suppression motion be denied. Id. at 5-52, 175. Mora filed "Objections to Report and Recommendation" on February 5, 1997, along with a motion to dismiss for violation of the Speedy Trial Act. Supp. App. at 1; Aplt. App. at 57. The district court held a hearing on these matters on February 24 and ordered the parties to file supplemental briefs with respect to Mora's objections to the report and recommendation and her motion to dismiss. Id. at 55, 175.

After submission of all required materials, the district court entered an order on April 1, 1997, adopting the magistrate's report and recommendation and denying Mora's motion to dismiss. Id. at 55-59. Relying on Henderson v. United States, 476 U.S. 321 (1986), the district court held that until it received all materials necessary to decide the motion to suppress, including the magistrate's report and recommendation and the parties' supplemental filings, the matter was not under advisement and the thirty-day period under 18 U.S.C. § 3161(h)(1)(J) did not begin to run. Id. at 58. Thus, the court concluded that the time from the filing of Mora's motion to suppress until the date of the judge's order adopting the magistrate's report and recommendation was excludable under 18 U.S.C. § 3161(h)(1)(F) and (J). Id.

Following the district court's adverse rulings on her motions to suppress and dismiss, Mora entered a conditional plea of guilty on April 9, 1997, reserving her right to appeal these rulings. Mora was sentenced on June 16, 1997, to thirty-seven months' imprisonment, sixty months of supervised release, and fined $1,500. Aplt. App. at 177.

6

## III

Mora first attacks the district court's denial of her motion to dismiss. She claims that the delay of some 209 non-excludable days during which the magistrate judge held her motion to suppress under advisement violated the Speedy Trial Act. The government counters, arguing that the magistrate is not bound by the requirements of the Speedy Trial Act, and, therefore, the time did not begin to run under the Act until the district judge was in possession of both the magistrate's report and recommendation as well as the parties' materials in support of their respective positions.

"Compliance with the requirements of the Speedy Trial Act is a question of law which we review *de novo*." United States v. Dirden, 38 F.3d 1131, 1135 (10th Cir. 1994). The Act generally requires that the trial of a defendant charged with the commission of a crime must commence within seventy days of the filing of the indictment or from the date the defendant first appears before a judicial officer of the court, whichever is later. Id.; 18 U.S.C. § 3161(c)(1). The Act serves the dual purpose of protecting a defendant's constitutional right to a speedy trial and serving the public interest in bringing prompt criminal proceedings. United States v. Saltzman, 984 F.2d 1087, 1090 (10th Cir. 1993). This appeal concerns the application of three specific exceptions to this general seventy-day rule. Specifically, § 3161(h), provides, in relevant part that,

> The following periods of delay shall be excluded . . . in computing the time within which the trial . . . must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the

defendant, including but not limited to--

. . .

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

. . .

(J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

. . .

(8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion . . ., if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. . . .

As noted above, the magistrate held that "the period of time necessary for the consideration and disposition of the defendant's motion is excluded from the Speedy Trial Act pursuant" to these three exceptions, and the magistrate further ordered an open-ended continuance on Mora's trial date. Aplt. App. at 1-2. In finding no violation of the Act, the district judge did not consider or rely upon § 3161(h)(8), but instead held, on a separate basis, that all of the time during which the magistrate considered the suppression motion is excludable under § 3161(h)(1)(F) and (J). The district judge did so on the theory that the Act does not apply to magistrate judges and a pretrial motion is therefore not "under advisement by the court," within the meaning of § 3161(h)(1)(J), until all necessary materials, including the magistrate's report and recommendation, are available for consideration by the district

8

judge.[1]

In order to fully appreciate Mora's argument on this issue, we must first construct a chronology and examine the progression of this case from the date of her arrest. Mora was arrested on January 8, 1996, indicted on January 10, and had her initial appearance before a judicial officer and was arraigned on January 11. Thus, under the plain language of the Speedy Trial Act, the clock began to run on January 12, the day after Mora's appearance and arraignment. United States v. Dezeler, 81 F.3d 86, 88 (8th Cir. 1996) (citing United States v. Long, 900 F.2d 1270, 1274 (8th Cir. 1990)). Mora filed her motion to suppress on January 24, which is an excludable day for Speedy Trial Act purposes. United States v. Blankenship, 67 F.3d 673, 676 (8th Cir. 1995). The superseding indictment was also filed on January 24, which added the charge of "with intent to distribute" to the original charge of possession and, therefore, did not reset the speedy trial clock. See, Long, 900 F.2d at 1275 n.4 (clock is not restarted upon the return of a superseding indictment); United States v. Bermea, 30 F.3d 1539, 1567 (5th Cir. 1994) (superseding indictment does not affect the speedy trial clock for offenses charged in original indictment or any offenses required to be joined, and the clock continues to run from original indictment or arraignment);

---

[1]It is interesting to note that the magistrate felt compelled to provide written findings in order to justify any delay in ruling on the suppression motion and to hold all such time excludable under specific exceptions to the Speedy Trial Act, a finding that appears to be unnecessary if he were under no obligation to adhere to the Act's deadlines. See Aplt. App. at 1-2. The district judge did not rely on these justifications and findings, and instead held that the Act does not apply to magistrates in the first place.

United States v. Savage, 863 F.2d 595, 597 (8th Cir. 1988) (superseding indictment which merely embellishes an earlier charge or makes technical changes will not reset the speedy trial clock). Thus, twelve includable days elapsed between Mora's arraignment and the filing of her suppression motion.

The hearing on Mora's suppression motion was held on February 27, 1996. Subsection (h)(1)(F) excludes all time, regardless of reasonableness, between the filing of the pretrial motion and the hearing thereon, as well as all time following the hearing during which the court awaits the filing of additional materials by the parties that are needed for proper disposition of the motion.[2] Henderson, 476 U.S. at 326-331. Once all such materials are available to the court, subsection (h)(1)(J) comes into play, which provides for a thirty-day excludable delay during which the matter is under advisement. See United States v. Mers, 701 F.2d 1321, 1336 (11th Cir. 1983) (subsection (J) begins on the day following the date on which the court has received everything it needs in order to reach a decision).

Here the last filing with respect to the suppression motion was done on April 9, 1996. Thus, Mora argues that, at that point, subsection (F) yielded to subsection (J), which, she asserts, provides the magistrate with thirty excludable days in which to issue his recommendation. Mora contends that the seventy-day clock began to run again on May 9, 1996, on the expiration of the thirty-day excludable period. The magistrate issued his report

---

[2]This period of excludable delay under subsection (F) may also include the time during which the court awaits the preparation of the transcript, if such is necessary for the proper disposition of the motion. Blankenship, 67 F.3d at 676-677.

and recommendation on January 31, 1997, which is an excludable day. Blankenship, 67 F.3d at 677. Between May 1, 1996, the day on which the magistrate entered the order continuing the trial date, and January 31, 1997, the district court's docket sheet shows no actions taken on the case. Aplt. App. at 175. Thus Mora argues that the time between the conclusion of all matters relating to the hearing and the filing of the report and recommendation exceeded not only the thirty-day "under advisement" period of subsection (J), but also far exceeded the general seventy-day period of nonexcludable days in which to bring Mora to trial. Mora asserts that by the time the report and recommendation was filed, 209 nonexcludable days had elapsed. If Mora is correct, there is a clear violation of the Speedy Trial Act.

The government's response to the claim of violation of the Speedy Trial Act is essentially that the thirty-day limit of § 3161(h)(1)(J) on holding any proceeding "under advisement" does not apply to magistrate judges. Brief of Plaintiff-Appellee at 11-14. The government says that magistrate judges are not covered as within the "court," as that word is used in the Act. Thus, the government urges that the thirty-day "under advisement" period does not apply at all to the time during which a magistrate judge is preparing his report and recommendation. In making this argument, the government would ask us to hold that magistrate judges are not a part of the district court for purposes of the Act. Because we find this contention untenable and without support, we must reverse the Speedy Trial Act ruling below.

As noted above, the very purpose of the Speedy Trial Act is to protect a defendant's

constitutional right to trial without unnecessary delay and to serve the public interest in prompt resolution of criminal proceedings. If we were to adopt the government's argument, we would essentially gut the Act by creating a mechanism by which the lower courts could effectively circumvent the requirements of the Act. Under the government's reading of the Act, the district judge can simply render the Act meaningless by passing off issues to the magistrate, who then has an unlimited amount of time to consider the issues and enter an order or recommendation. Such an interpretation would necessarily imperil any defendant whose pretrial matters are referred to a magistrate, leaving the defendant in an indefinite period of limbo while the magistrate considers such pretrial matters, unburdened by the Act's deadlines. We agree with the reasoning of Chief Judge Lay in United States v. Long, 900 F.2d 1270, 1275 (8th Cir. 1990):

> The government's reading would provide the magistrate a blank check to consume unlimited time between the hearing or receipt of all final submissions, and the issuance of his report and recommendation. We see no reason to exempt magistrates from the statutory limit of 30 excludable days for taking a motion under advisement after receiving all materials needed to decide it.

The government stresses, however, that since the district judge is charged with the duty of supervising magistrates, there is no reason to believe the public or a defendant will run the risk of undue delay by a magistrate judge. We think that the public and the criminal defendant are entitled under the Act to more protection than that afforded by the promise of supervision by the district judge. One purpose of the Act is to protect a defendant's constitutional right to a speedy trial. Saltzman, 984 F.2d at 1090.

12

We find the government's contention that magistrates are not a part of the district court to be without merit. The magistrate judges serve as an arm of the district court whose purpose it is to assist the district judges in resolving cases assigned to them. There is no indication from the Act or any other relevant authority that magistrates are not to be considered part of the court for speedy trial purposes. Our review of the opinions of courts of appeals which have addressed the issue reveals no support for the government's argument. See, United States v. Dezeler, 81 F.3d 86, 88 (8th Cir. 1996) (magistrate is bound by thirty-day "under advisement" limitation of Speedy Trial Act); United States v. Long, 900 F.2d 1270, 1275 (8th Cir. 1990) (found no reason to exempt magistrates from the thirty-day limit for taking motions under advisement); United States v. Thomas, 788 F.2d 1250, 1257-1258 (7th Cir. 1986) (suggested, without holding, that the thirty-day under advisement period is applicable to magistrates); United States v. Mers, 701 F.2d 1321, 1337 (11th Cir. 1983) (thirty-day under advisement period is applicable to magistrates).

The government relies heavily on Henderson v. United States, 476 U.S. 321 (1986), as providing support for its argument. The government cites the Court's statement that the "provisions of the [Speedy Trial] Act are designed to exclude all time that is consumed in placing the trial court in a position to dispose of a motion." Id. at 331. This, of course, includes the time from the filing of any pretrial motion until the hearing on that motion, as well as all time during which the trial court awaits materials required for proper disposition of the motion after the hearing. Id. at 329-331. Thus, subsection (J) only takes effect after

13

the court is in possession of all materials it needs in order to issue a ruling on the motion. The government then contends that the "court" referred to in subsection (J) can only refer to that judicial authority which has the power to actually decide the matter, which is the trial judge and not the magistrate. We do not read Henderson as establishing such a narrow definition of the word "court" in subsection (J). We instead feel it clear that a magistrate judge is an arm of the court, subject to the requirements of the Speedy Trial Act.

Concluding, as we have, that the magistrate is subject to the thirty-day "under advisement" period set forth in subsection (J), it is obvious that Mora's rights under the Speedy Trial Act were violated. The last filing necessary for ruling on Mora's suppression motion was made on April 9, 1996, at which time the government filed its supplemental response. The magistrate issued his recommendation on January 31, 1997. There is nothing between these two events which would independently toll the speedy trial clock. Thus, under subsection (J), the clock began to run again on May 9, 1996, or thirty days after April 9. Starting from May 9, we count 267 days of nonexcludable time between May 9, 1996, and January 31, 1997. That number, less fifty-eight days,[3] yields a total of 209 nonexcludable days. Clearly, this number of nonexcludable days far exceeds the allowed seventy days in which Mora must have been brought to trial.

We must further decide whether the trial judge and magistrate may each be entitled

---

[3]Twelve nonexcludable days elapsed between Mora's arraignment and the day she filed her motion to suppress, and these days are subtracted from the seventy-day period under the Act.

to a separate thirty-day "under advisement" period under subsection (J). We agree with the Eleventh Circuit that the district judge is entitled to such an additional excludable period in order to properly review the magistrate's report and recommendation. See Mers, 701 F.2d at 1336-1337. Reading the authority granted to the district judge in the Magistrate's Act to refer pretrial matters to the magistrate together with the requirements of the Speedy Trial Act, the most appropriate manner in which to effectuate the purpose of both statutes is to give the magistrate and district judge a separate thirty-day period for having the matter under advisement. The Speedy Trial Act recognizes the need for thirty days in order to permit the judicial officer to issue adequate and competent findings and conclusions after all materials are filed. If a pretrial matter is referred by the district judge to a magistrate judge, the parties have ten days in which to file objections to the recommendation of the magistrate once issued, and there is an additional ten-day period in which a response to such objections may be filed. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

If the district judge were not provided with an additional thirty days in which to fully consider the recommendation, the trial judge's duty to review the report and recommendation, along with any objections filed by the parties, would be compromised. This result would frustrate the purpose of the Magistrate's Act as well as unduly burden the district judge under the Speedy Trial Act. Further, as noted in Mers, the Judicial Guidelines at 43 state that "when a pretrial matter is considered by both a magistrate and a judge pursuant to [the Magistrates Act], the Committee believes that the [Speedy Trial Act] permits

15

two thirty day periods for consideration of the same matter." Id. at 1336. We therefore "decline to adopt a mechanical rule that all of this must be accomplished within thirty days." Mers, 701 F.2d at 1337. But see Thomas, 788 F.2d at 1257-1258 (suggesting, but not deciding, that since the district judge and magistrate are part of the court as a whole, and since the Speedy Trial Act only gives the court rather than each judicial officer a total of thirty days to have a matter under advisement, the magistrate and judge should not have a separate thirty-day "under advisement" period).

Regardless of whether one or two thirty-day excludable periods is allowed here, the Speedy Trial Act was seriously violated. The conviction and sentence must be reversed and the case must be dismissed. 18 U.S.C. § 3162(a)(2); Dezeler, 81 F.3d at 89.

**IV**

Determining that Mora's case must be dismissed and her conviction vacated, we must next decide whether such dismissal is with or without prejudice. Section 3162(a)(2) provides guidance in this matter, and states that in determining whether to dismiss with or without prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice."

The decision whether to dismiss with or without prejudice usually belongs to the district court in the first instance, unless the answer is so clear that remand is unnecessary.

16

United States v. Pasquale, 25 F.3d 948, 952 (10th Cir. 1994).  We believe that this is a matter properly to be decided by the district court in the first instance, after consideration of the relevant factors.  See United States v. Doran, 882 F.2d 1511, 1518 (10th Cir. 1989).

**V**

Mora additionally complains that the district court failed to conduct an adequate review of the magistrate judge's report and recommendation, and Mora further urges that the district court erred in denying her suppression motion.  However, because we vacate the judgment of conviction and the sentence, and remand for dismissal, with or without prejudice as the district judge shall determine, we need not consider these issues which have become moot.

**VI**

Accordingly, we **REVERSE** the district court's denial of Mora's motion to dismiss her speedy trial claim, **VACATE** her judgment of conviction and sentence, **REMAND** for a determination as to whether dismissal of the criminal charge against Mora shall be with or without prejudice, and **VACATE** the findings, conclusions and orders entered below on all matters other than the ruling on the motion to dismiss under the Speedy Trial Act.[4]

The mandate shall issue forthwith.

---

[4]Since this criminal proceeding will be dismissed, "our disposition of the instant case will prevent the flow of any adverse legal consequences from the district court's decision."  United States v. Sarmiento-Rozo, et al., 592 F.2d 1318, 1321 (5th Cir. 1979).  As it stated, the Fifth Circuit there followed the guidelines of the Supreme Court in United States v. Munsingwear, Inc., 340 U.S. 36 (1950).  See also Great Western Sugar Co. v. Nelson, 442 U.S. 92 (1979).

17