04-4545-cr
United States v. Oberoi

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2007

(Submitted: April 22, 2008      Decided: October 23, 2008)

Docket No. 04-4545-cr

- - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

   <u>Appellee</u>,

  - v.-

TEJBIR S. OBEROI,

   <u>Defendant-Appellant</u>.

- - - - - - - - - - - - - - - - - - - -x

  Before:  JACOBS, <u>Chief Judge</u>, KEARSE, KATZMANN,
      <u>Circuit Judges</u>.

  Tejbir Oberoi appeals from his conviction in the United States District Court for the Western District of New York (Arcara, <u>J.</u>), chiefly on the ground that he was denied a speedy trial.  We affirm.

        TEJBIR OBEROI, <u>pro se</u>.

        STEPHAN J. BACZYNSKI, Assistant United States Attorney (Terrance P. Flynn, United States Attorney for the Western District of New York, <u>on the brief</u>), <u>for Appellee</u>.

DENNIS JACOBS, Chief Judge:

Defendant-appellant Tejbir Oberoi appeals on speedy trial grounds the judgment of conviction entered against him on two offenses following a guilty plea in the United States District Court for the Western District of New York (Arcara, J.). The filing of the felony complaint, on October 14, 1999, was followed by unusually event-filled pretrial proceedings, including three interlocutory appeals, hearings concerning bail (26 days), competency proceedings, and several switches of defense counsel before Oberoi elected to represent himself. Trial began on January 12, 2004. Two days later, Oberoi pled guilty.

On appeal, Oberoi (who continues pro se) alleges two violations of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174: (1) pre-indictment delay exceeding 30 days, and (2) pretrial delay exceeding 70 days. While this appeal was pending, the Supreme Court decided Zedner v. United States, 547 U.S. 489 (2006), which emphasized that the Speedy Trial Act serves the public's interest in efficient justice, and is not solely for the protection of the defendant or the mutual convenience of the defendant and prosecution. Zedner, 547 U.S. at 501-02. Zedner teaches that formal and transparent

2

procedural measures must be taken with regard to every delay that is not automatic under the statute. Id. at 506-07. Oberoi cites several formal deficiencies in how the district court and magistrate judges considered and announced delays in his case. Having considered these deficiencies, we conclude that both the pre-indictment and pretrial delay were nonetheless permissible under the Speedy Trial Act.

Oberoi also challenges his plea as less than a knowing and voluntary waiver of his right to trial, contending that the district court's refusal to appoint new defense counsel on the eve of trial coerced him into pleading guilty. We reject that claim.

The judgment of conviction is affirmed.

**BACKGROUND**

Oberoi, a dentist in Buffalo, New York, defrauded insurance companies and employer dental plans by making false reimbursement claims for procedures he never performed. On October 14, 1999, the government filed a complaint charging Oberoi with mail fraud, 18 U.S.C. § 1341, and health care fraud, id. § 1347. On December 16, 1999, a grand jury returned an indictment charging Oberoi with 34

counts of mail fraud, and 123 counts of making false statements in connection with health care benefits, <u>id.</u> § 1035(a)(2).

Procedural History

Oberoi was represented by seven defense attorneys, in succession and sometimes in tandem, before he eventually elected to represent himself.  The changes in counsel led to three interlocutory appeals: two brought by Oberoi (challenging the district court's grant of defense counsel's withdrawal motion) and one brought by the Federal Defender (challenging the district court's denial of its withdrawal motion).

On June 10, 2003 -- a week before the trial was set to begin -- Oberoi wrote to the district court seeking the discharge of his then-court appointed counsel, John Molloy, based on Molloy's repeated refusal to file a motion to dismiss on Speedy Trial Act grounds.  At a conference on the eve of trial, Oberoi told the court that Molloy was unprepared for trial and had failed to provide adequate representation in the bail proceedings.  The district court gave Oberoi the option of proceeding with Molloy as his

counsel or appearing pro se, and warned Oberoi about the risks of appearing pro se.

On the morning of trial, Oberoi advised the district court that he would proceed without a lawyer.  After further cautioning Oberoi about the risks of self-representation, the district court found that Oberoi waived his right to counsel knowingly and voluntarily and directed Molloy to appear as stand-by counsel.  During a subsequent recess in the proceedings, Oberoi complained of chest pains and was taken to the hospital.  The district court dismissed 76 potential jurors and adjourned the trial to June 17, 2003.

On June 17, the district court again impaneled potential jurors, and Oberoi again complained of chest pains.  The district court dismissed 82 potential jurors and ordered that Oberoi be examined for physical capacity to stand trial.

The physician's report stated that there was no physiological basis for Oberoi's complaints, but noted that Oberoi was unable to discuss his problems rationally.  At a status conference on July 10, 2003, the district court found that Oberoi was physically fit to stand trial.  However, in light of the notation about Oberoi's irrationality, the

district court committed Oberoi for a psychiatric evaluation. The court assigned Molloy to represent Oberoi in the competency proceedings.

The psychologist reported that he was unable to reach a conclusion as to Oberoi's competency to stand trial, opining that Oberoi suffered from post-traumatic stress disorder as a consequence of his arrest and incarceration. At a subsequent status conference (on September 23, 2003), the government and Molloy agreed that a second opinion was warranted in view of the inconclusive report. The second doctor (this one a psychiatrist) diagnosed chronic adjustment disorder, and concluded that Oberoi was competent to stand trial.

On November 14, 2003, the district court ruled that Oberoi was mentally competent to stand trial. The court relieved Molloy as counsel and reassigned him as Oberoi's stand-by counsel for trial, which was then scheduled to begin on January 6, 2004.

While the competency proceedings were pending, Oberoi moved pro se to dismiss the indictment for violations of two Speedy Trial Act requirements: that an indictment be filed within 30 days of an arrest, and that trial begin within 70

6

days of an indictment. The district court denied the motion on December 11, 2003. United States v. Oberoi, 295 F. Supp. 2d 286 (W.D.N.Y. 2003). The detailed opinion analyzed each challenged time period "with a running tally as to the number of non-excluded speedy trial days at the end of each period." Id. at 291. The district court concluded that Oberoi had waived his challenge to the government's pre-indictment delay. Oberoi's defense counsel "twice requested that the filing of the indictment be delayed so that he could conduct pre-indictment discovery and discuss with the government a possible plea disposition." Id. at 307. The district court reasoned that Oberoi "requested the continuances, and the resulting delay did not subvert the ends of justice," and so Oberoi was "precluded under the exception to the non-waiver rule from now asserting a Speedy Trial Act violation for the period of the continuances." Id.

As to the post-indictment period, the district court concluded that much of the delay was subject to the self-executing provisions of the Speedy Trial Act, see 18 U.S.C. § 3161(h)(1), and that much of the rest was (as we discuss more fully below) attributable to the preparation of

defense motions and had been excluded properly by the magistrate judge as "delay resulting from any pretrial motion." 18 U.S.C. § 3161(h)(1)(F). In total, the district court counted no more than 20 days elapsed on Oberoi's speedy trial clock. Oberoi, 295 F. Supp. 2d at 306.

The Trial and Guilty Plea

The parties appeared for trial on January 12, 2004. After a day of jury selection, Oberoi advised the district court that he had decided to plead guilty. He explained that he was "positive, 110 percent positive" that the prosecution would be dismissed due to pre-indictment delay. After a lengthy colloquy, the district court determined that Oberoi's decision to plead guilty was made without coercion.

Oberoi entered a plea agreement with the government. In exchange for his plea to one count of mail fraud and one count of making a false statement in connection with a healthcare matter, the government agreed to dismiss the remaining 155 counts in the indictment. Oberoi reserved the right to appeal on Speedy Trial grounds. On January 15, 2004, Oberoi pled guilty pursuant to the agreement. The district court found Oberoi competent and capable of

8

entering an informed plea, and that his plea was knowing, voluntary and supported by the facts.

Oberoi was sentenced principally to 63 months of imprisonment and three years of supervised release. He was released from prison on February 12, 2008. In this Court, Oberoi filed more than a dozen motions (seeking stand-by counsel, bail pending appeal, and extensions of time, among other forms of relief), and numerous motions for reconsideration, which delayed the assignment of his appeal to a panel for nearly four years.

**DISCUSSION**

The Speedy Trial Act mandates the "dismissal of charges against a defendant who is not indicted, arraigned, or brought to trial within periods of time set forth in the statute." United States v. Gaskin, 364 F.3d 438, 451 (2d Cir. 2004). No more than 30 days can pass between arrest and indictment, and no more than 70 days between indictment and the start of trial--except that the Act contemplates the exclusion of certain periods of delay (described below) from the calculation. See 18 U.S.C. § 3161(b) and (d)(2). This appeal presents several questions about those statutory

exclusions, as applied to both pre-indictment and pretrial delay.

"We review the district court's findings of fact as they pertain to a speedy trial challenge for clear error and its legal conclusions de novo." Id. at 450.

**I**

Oberoi was arrested on a felony complaint on October 18, 1999; he was indicted by a grand jury on December 16, 1999--in all, after 58 days had passed. Oberoi argues that this pre-indictment delay violated the 30-day time limit for the government to seek an indictment because the earlier-filed complaint pleaded the same "such charges." 18 U.S.C. § 3161(b).[1] In that event, the Act provides that "such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." Id. § 3162(a)(1). Dismissal can be with or without prejudice, id., but the

---

[1] The Speedy Trial Act provides, in relevant part:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

18 U.S.C. § 3161(b).

10

latter "is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." United States v. Taylor, 487 U.S. 326, 342 (1988).

Two pre-indictment delays occurred here. On November 5, 1999 (seventeen days after Oberoi's arrest), the parties appeared before Magistrate Judge Carol Heckman and jointly sought an adjournment of the first preliminary hearing in order to allow for pre-indictment discovery. The adjournment was granted until December 1, 1999. No reference was made to the Speedy Trial Act. (The exchange is set out in the margin.[2])

---

[2] At the November 5 conference, John Rogowski represented the government and Jack Danzinger represented Oberoi.

> MR. ROGOWSKI: Your Honor, the matter was scheduled for preliminary hearing. Pursuant to discussions with Mr. Danzinger and Mr. Greenman, we have agreed to mutually request an adjournment. It's the first adjournment of the preliminary hearing. We have engaged in some preindictment discovery, and we intend to continue to do so in the meantime, Judge.
>
> THE COURT: Okay. How long of an adjournment are you requesting?
>
> MR. ROGKOWSKI: Thirty days, your Honor.

At the December 1, 1999 conference, the parties requested "an additional two-week period in which to conduct pre-indictment discovery along with some possible discussions concerning a disposition."  Tr. 12/1/99 (District Ct. Docket # 305).  Oberoi's defense counsel advised that "it would be in the interests of justice" to delay the preliminary hearing, so that he could review the substantial discovery materials produced by the government.  Id.  Magistrate Judge Heckman asked whether the parties had any objection to "excluding the time in the interests of justice."  Id.  The parties did not.  Fifteen days after the conference, Oberoi was indicted.

**A**

THE COURT: Okay.  That's agreeable to the defense, I assume?

MR. DANZINGER: That's correct, your Honor.

THE COURT: Okay.  How is December 1st at 9 o'clock?

MR. DANZINGER: That's fine.

. . .

MR. ROGKOWSKI: That's fine, your Honor.

Tr. 11/5/99 (District Ct. Docket # 304).

While Oberoi's appeal was pending, the Supreme Court decided Zedner v. United States, 547 U.S. 489 (2006), which rejected a defendant's prospective waiver of the Speedy Trial Act. "Conspicuously, § 3161(h) has no provision excluding periods of delay during which a defendant waives the application of the Act, and it is apparent from the terms of the Act that this omission was a considered one." Id. at 500. The Act expressly contemplates waiver that is retrospective. 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section."); see also United States v. Abad, 514 F.3d 271, 274 (2d Cir. 2008) (per curiam). From this, the Supreme Court inferred that retrospective waiver is permissible, whereas prospective waiver is not. Zedner, 547 U.S. at 502-03.

"The purposes of the Act also cut against exclusion on the grounds of mere consent or waiver." Zedner, 547 U.S. at 500. While it protects "a defendant's right to a speedy trial," the Speedy Trial Act was "designed with the public interest firmly in mind." Id. at 501. The legislative history bespeaks the congressional goal of "reducing

13

defendants' opportunity to commit crimes while on pretrial release and preventing extended pretrial delay from impairing the deterrent effect of punishment." Id. Given that "defendants may be content to remain on pretrial release, and indeed may welcome delay," the Supreme Court deemed it "unsurprising that Congress refrained from empowering defendants to make prospective waivers of the Act's application." Id. at 501-02.

The government in Zedner pointed out that the defendant's "express waiver induced the district court to grant a continuance without making an express ends-of-justice finding," and argued that "basic principles of judicial estoppel" should preclude the defendant "from enjoying the benefit of the continuance, but then challenging the lack of a finding." Id. at 503.

The Supreme Court declined to apply judicial estoppel because the defendant's earlier "position" (seeking a continuance) was not "clearly inconsistent" with his position on appeal (invoking the Speedy Trial Act). Id. at 504-06 (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)). The defendant sought the continuance after signing a blanket prospective waiver of the Speedy Trial Act. The

14

parties' discussion about the continuance request "did not focus on the requirements of the Act," because the parties (and the district court) "proceeded on the assumption that the court's waiver form was valid and that the Act could simply be disregarded."  Id. at 506.  So "the best understanding of the position taken" by the defendant was "that granting the requested continuance would represent a sound exercise of the trial judge's discretion in managing its calendar.  This position was not 'clearly inconsistent' with [the defendant's] later position that the continuance was not permissible under the terms of the Act."  Id.

On this appeal, the government reads Zedner broadly (and against interest) to "reject[] the notion that a defendant can be estopped from asserting a Speedy Trial Act violation absent deceit or fraud."  We read Zedner more narrowly, to say that a defendant is estopped by virtue of obtaining a continuance only if notice is taken of the Speedy Trial Act.

The formal and transparent procedural measures described in Zedner were not taken here.  At the November 5, 1999 conference, the parties "did not focus on the requirements of the Act."  Zedner, 547 U.S. at 506.  Indeed,

15

the Act was "simply . . . disregarded"--there was no notice taken of the "ends of justice" or any other possible ground for an exclusion of time.  Id.  As a result, Oberoi's earlier position (ignoring the Speedy Trial Act) is not "clearly inconsistent" with his later position (invoking the Speedy Trial Act).  Under these circumstances, Oberoi is not judicially estopped from challenging the pre-indictment delay under the Speedy Trial Act, even if that delay was attributable to his counsel's request for an adjournment.

However, the Act "requires dismissal only of 'such charge against the individual contained in such complaint.'" United States v. Napolitano, 761 F.2d 135, 137 (2d Cir. 1985) (quoting 18 U.S.C. § 3162(a)(1)).  "Napolitano instructs that this language must be read strictly." Gaskin, 364 F.3d at 451.  We therefore do not "dismiss an untimely indictment pursuant to § 3162(a)(1) if it pleads different charges from those in the complaint."  Id.  This is true "even if the indictment charges 'arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint.'"  Id. (quoting Napolitano, 761 F.2d at 137).  The test for determining whether a charge

16

in an indictment was "contained" in an earlier-filed complaint is as follows:

> [W]hen a complaint charge and an indictment charge involve overlapping or even identical facts, dismissal is not warranted under § 3162(a)(1) if the indictment charge requires proof of <u>elements distinct from or in addition to</u> those necessary to prove the crimes pleaded in the complaint. Under such circumstances, the charge in the indictment is simply not 'such charge' as was pleaded in 'such complaint.'

Id. at 453 (quoting Napolitano, 761 F.2d at 137 (emphasis added)). (This is similar to the Blockburger test for double jeopardy, which we discuss in the margin.[3])

For example, in Gaskin, the untimely indictment charged marijuana possession whereas the complaint had charged only the attempt. Both are violations of the same statute--21 U.S.C. § 846--but the drug possession charge in the indictment "require[d] proof of a fact not necessary to

---

[3] Blockburger looks in both directions--it asks whether each count "requires proof of an additional fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). The Speedy Trial Act looks in one direction--it asks whether the "indictment charge requires proof of elements distinct from or in addition to those necessary to prove the crimes pleaded in the complaint." Gaskin, 364 F.3d at 453. Thus double jeopardy bars a second prosecution for a lesser included offense whereas the Speedy Trial Act does not bar untimely "greater indictment charges with lesser-included complaint charges." Id.

17

prove the complaint charge of attempted possession, namely, defendant's actual or constructive possession of marijuana." Id. Because the two were not the same "such charge," the Speedy Trial Act did not require dismissal of the untimely indictment. Id.; see also United States v. Bailey, 111 F.3d 1229 (5th Cir. 1997) (denying Speedy Trial relief to defendant initially charged with misdemeanor possession of a stolen firearm and indicted more than 30 days later on felony possession of the same weapon; the additional element required to prove the felony--that the stolen firearm had a value of $100 or more--meant the indictment and complaint charges were not the same).

Here, the complaint charged that between December 1992 and February 1999, Oberoi did:

> (1) knowingly and unlawfully devise a scheme to defraud and to obtain money and property from various insurance companies and health benefit programs by means of false and fraudulent pretenses and representations utilizing the U.S. Postal Service, and
>
> (2) beginning on or about August 21, 1996 and continuing to the present, knowingly and willfully execute a scheme to defraud health care benefit programs and obtain money and property from health care benefit programs by means of false and fraudulent pretenses and representations,
>
> in violation of 18 U.S.C. § 1341 and 1347.

18

The indictment charged Oberoi with 34 counts of mail fraud (based on false reimbursement claims), 18 U.S.C. § 1341, and 122 counts of making false statements in connection with health benefits, id. § 1035.  Oberoi pled guilty to one count of each.  The remaining counts were dismissed on the government's motion.

The § 1035 counts were fresh to the indictment and therefore raise no overlap issue.  But we do need to consider the overlap of mail fraud counts.  The complaint and the indictment both charged mail fraud in violation of 18 U.S.C. § 1341, the generic elements of which do not vary from count to count.  See United States v. Walker, 191 F.3d 326, 334 (2d Cir. 1999) (identifying elements of mail fraud as "(1) a scheme to defraud victims of (2) money or property, through the (3) use of the mails").  The single mail fraud count to which Oberoi pled guilty is count 29.  So the question becomes whether count 29 is the same "such charge" as any of the charges "contained" in the complaint.  18 U.S.C. § 3162(a)(1).

Count 29 is specific in terms--it charged Oberoi with submitting a fraudulent claim to the Niagara Mohawk employer dental plan (administered by Cigna) on December 24, 1995,

19

for osseous surgery on patient "CD 7388."  The complaint makes no reference to that particular mailing, or to that particular patient or to that particular employer dental plan; neither does the affidavit attached to the complaint (and made a part thereof), which lists scores of mailings and specifies the patients and plans for each.  We need not define what features would make two charges the same for purposes of the Speedy Trial Act; it is enough that, here, the specific offense to which Oberoi pled guilty does not appear in the complaint.  Accordingly, the Speedy Trial Act does not require the dismissal of either count of conviction as a result of pre-indictment delay.

**B**

The government argues in passing that the Speedy Trial Act error, if any, was harmless.  However, Zedner forecloses harmless error review of a district court's failure to exclude time under the Speedy Trial Act.  Zedner, 547 U.S. at 507-09.  A "straightforward reading" of the statutory wording supports that conclusion.  Id. at 508.  So does logic: "[a]pplying the harmless-error rule would . . . tend to undermine the detailed requirements of the provisions

regulating ends-of-justice continuances." Id. The Supreme Court was also wary of depriving the Act of its bite--after all, a harmless error "approach would almost always lead to a finding of harmless error because the simple failure to make a record of this sort is unlikely to affect the defendant's rights." Id. at 509. And once one takes account of the public interest in a speedy trial, the government's argument founders on the question: harmful to whom?

The same concerns militate against applying harmless error analysis to the magistrate judge's failure to stop the pre-indictment speedy trial clock. It is hard to imagine a circumstance in which pre-indictment delay of only a few days would be anything other than harmless.

**II**

Oberoi points to 28 discrete periods of post-indictment delay for a total of 1,487 days that he claims were not properly excluded under the Speedy Trial Act, and that far exceed the 70-day time limit set by the Speedy Trial Act as follows:

> In any case in which a plea of not guilty is
> entered, the trial of a defendant charged in

21

> an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

A considerable amount of time elapsed while Oberoi's various defense lawyers prepared to file pretrial motions. The magistrate judges assigned to oversee the pretrial proceedings excluded that time pursuant to 18 U.S.C. § 3161(h)(1)(F), which stops the clock for the "delay resulting . . . from the filing of [a pretrial] motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Id. In short, the magistrates invoked the statutory exclusion--for the period between filing and disposition of a motion--to exclude the time spent preparing the motion for filing. Absent those exclusions, more than 70 days would have elapsed on Oberoi's speedy trial clock. The propriety of excluding time for preparing motions is a substantial question.

22

**A**

The Speedy Trial Act contemplates that

> [t]he following periods of delay <u>shall be excluded</u> in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> > (1) Any period of delay resulting from <u>other proceedings concerning the defendant</u>, including but <u>not limited to</u>--
> >
> > . . .
> >
> > > (F) delay resulting from <u>any pretrial motion</u>, <u>from the filing</u> of the motion <u>through the conclusion</u> of the hearing on, or other prompt disposition of, such motion;
> > >
> > > . . .
> > >
> > > (J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.
> >
> > . . .
> >
> > (8)(A) <u>Any period of delay</u> resulting from a <u>continuance</u> granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, <u>if</u> the judge granted such continuance on the basis of his <u>findings</u> that the <u>ends of justice</u> served by taking such action <u>outweigh</u> the <u>best interest of the public and the defendant in a speedy trial</u>. No such period of delay resulting from a continuance granted by the court

23

in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either <u>orally or in writing, its reasons</u> for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h) (emphases added).

There is consensus among the circuits that motion preparation time may be excluded in the interests of justice, pursuant to § 3161(h)(8)(A), so long as the judge makes a contemporaneous prospective finding that such an exclusion is warranted. <u>See, e.g.</u>, <u>United States v. Jarrell</u>, 147 F.3d 315, 318-19 (4th Cir. 1998) (exclusion of motion preparation time, if supported by oral or written findings that a continuance serves the ends of justice, is consistent with the language of the Speedy Trial Act); <u>United States v. Fields</u>, 39 F.3d 439, 443 (3d Cir. 1994) (Section 3161(h)(8)(A) justified a continuance for preparation of motions where district court stated that such a continuance was necessary to enable defense counsel to investigate and prepare pretrial motions); <u>United States v. Butz</u>, 982 F.2d 1378, 1380-81 (9th Cir. 1993) ("We have upheld the exclusion of time for a continuance to allow

24

defense counsel time to prepare motions."); United States v. Thompson, 866 F.2d 268, 273 (8th Cir. 1989) (exclusion of motion preparation time warranted under § 3161(h)(8)(A)); United States v. Monroe, 833 F.2d 95, 100 (6th Cir. 1987) (same).

No published opinion in this Circuit decides that question, and in any case the exclusions here were made under subsection § 3161(h)(1), not § 3161(h)(8)(A). This appeal therefore turns on the question whether time can be excluded for the preparation of motions under subsection (h)(1). The circuits that have considered that question disagree. Several circuits have held that the delay attributable to motion preparation can be excluded under subsection (h)(1). See United States v. Mejia, 82 F.3d 1032, 1035-36 (11th Cir. 1996) ("[C]ourts have concluded that the time given for filing potential pretrial motions is excluded under 18 U.S.C. § 3161(h)(1) because the time given is 'delay resulting from other proceedings concerning the defendant.' Whether motions are actually filed during the extension is unimportant." (internal citations omitted)); United States v. Lewis, 980 F.2d 555, 564 (9th Cir. 1992) (finding "persuasive" decisions holding "that § 3161(h)(1)

25

excludes from [Speedy Trial Act] calculations time that the trial judge expressly designates for the preparation of motions, even though the provision does not expressly cover such preparation time"); United States v. Mobile Materials, Inc., 871 F.2d 902, 913 (10th Cir. 1989) ("We believe that a permissible addition to the list of proceedings that automatically toll the speedy trial clock would be a grant of time by the district court--in response to a written or oral request by the defendant--for the preparation of written pretrial motions."); United States v. Wilson, 835 F.2d 1440, 1444 (D.C. Cir. 1987) ("[T]he trial court may exclude motion preparation time in its sound discretion."); United States v. Tibboel, 753 F.2d 608, 610 (7th Cir. 1985) ("[T]ime consumed in the preparation of a pretrial motion must be excluded--provided that the judge has expressly granted a party time for that purpose."); United States v. Jodoin, 672 F.2d 232, 238 (1st Cir. 1982) ("Whether or not this additional delay fits within the language of § 3161(h)(1)(F), . . . it should be excluded.").

The Fourth and Sixth Circuits are of the opposite view. See United States v. Jarrell, 147 F.3d 315, 317-18 (4th Cir. 1998); United States v. Moran, 998 F.2d 1368, 1370-71 (6th Cir. 1993).

The circuits divide on the statutory wording.  In considering the statutory exclusions of time, the Seventh Circuit observed that in "this as in other respects," the Speedy Trial Act is "an unsatisfactory piece of draftsmanship."  Tibboel, 753 F.2d at 610.  While the Act's legislative history "contains some, but equivocal, indication that all preparation time is includable (i.e., part of the 70 days) unless the judge grants a continuance, the statute itself points in a different direction."  Id. (internal citations omitted).  To the Seventh Circuit, it is apparent from § 3161(h)(1)(F)

> that a proceeding on a pretrial motion is one of the "other proceedings" to which 3161(h)(1) refers; and while F itself refers only to the period between the filing of the motion and the disposition of it, and not to the period during which the motion is being prepared, section 3161(h)(1) is explicit that the particular intervals in subsections A through J are illustrative rather than exhaustive ("including but not limited to").

Id.; see also Jodoin, 672 F.2d at 238 (Breyer, J.) ("Clause (F) is but an illustration of the general language of § 3161(h)(1) . . . . The 'time-for-filing' motion, if not part of the suppression motion, is directly related to it."); Mobile Materials, 871 F.2d at 913 ("The open-ended construction of section 3161(h)(1) and the invitation

27

implicit in the legislative history of the Act cannot be ignored."). The Seventh Circuit concluded "that time consumed in the preparation of a pretrial motion must be excluded--provided that the judge has expressly granted a party time for that purpose." Tibboel, 753 F.2d at 610. This last qualification prevents abuse. Without it, either party "could delay trial indefinitely merely by working on pretrial motions right up to the eve of trial." Id.; cf. United States v. Hoslett, 998 F.2d 648, 657 (9th Cir. 1993) ("[T]he Speedy Trial Act does not permit the exclusion of all pretrial motion preparation time as a routine matter."). In reaching the same conclusion, the Tenth Circuit considered fairness and efficiency:

> Such a grant of time undoubtedly allows the accused to better pursue a defense and is therefore consistent with the objective of section 3161(h)(1). But it serves another salutary purpose as well. The grant allows the district court to dispose of the difficult question of whether the defendant's interests are better served by an uninterrupted march to trial or by a pause in proceedings at the defendant's request for the preparation of pretrial motions.

Mobile Materials, 871 F.2d at 913-14.

The circuits going the other way read the statutory wording as more restrictive. The Fourth Circuit observed that § 3161(h)(1)(F) automatically excludes the time while a

28

motion is sub judice; however, the "[t]ime allotted for the preparation of a pretrial motion 'is conspicuously absent' from this provision." Jarrell, 147 F.3d at 317 (quoting United States v. Hoslett, 998 F.2d 648, 655 (9th Cir. 1993)). "Congress' decision not to include pretrial motion preparation time within the scope of the delay excludable under § 3161(h)(1)(F) strongly indicates that it did not intend to exclude such time under § 3161(h)(1) at all." Id. The legislative history reinforced this reading: "The Senate Committee on the Judiciary concluded that excluding time for the preparation of motions would be 'unreasonable,' noting that such 'time should not be excluded [when] the questions of law are not novel and the issues of fact [are] simple.'" Id. (quoting S.Rep. No. 96-212, at 34). Otherwise, the public interest would be "denigrate[d] . . . by effectively allowing a defendant to relinquish his otherwise unwaivable right to a speedy trial." Id. at 318. The Sixth Circuit adopted a similar rationale. See Moran, 998 F.2d at 1371 ("The statute does not provide that a period allowed by the district court for preparation of pretrial motions is to be excluded from the seventy-day computations. Moreover, the burden should not be on the defendant to take affirmative steps to keep the speedy-trial

29

clock running.").

We join the sound majority of circuits holding that the time needed for the preparation of pretrial motions can be excluded under § 3161(h)(1). The Speedy Trial Act automatically excludes the "delay resulting from any pretrial motion, from the filing of the motion" until its prompt disposition by the court. 18 U.S.C. § 3161(h)(1)(F). Thus subsection (h)(1)(F) automatically stops the clock for preparation of response papers; why would the Act not likewise exclude the time for the preparation of the motion itself? We see no reason Congress would accommodate the needs of one party but not the other. The same interests and considerations that militate in favor of allocating time for a party to respond to a motion (and for a court to decide it) justify the allocation of time to prepare the motion in the first place, with this important caveat: the lower court must expressly stop the speedy trial clock, either on the record or in a written order.

This condition is critical. The automatic exclusions under the Act, e.g., for deferral of prosecution, id. § 3161(h)(1)(C), or an interlocutory appeal, id. § 3161(h)(1)(E), by their nature virtually always trigger district court docket entries that facilitate audits for

compliance with the Speedy Trial Act (in the trial court and on appeal). A specific finding that time should be excluded for the preparation of pretrial motions would serve the same purpose: the creation of a docket entry.

In light of these considerations, we hold that the time for pretrial motions to be prepared can be excluded pursuant to subjection (h)(1), so long as the judge expressly stops the speedy trial clock for that purpose.[4]

**B**

The filing of a report and recommendation by a magistrate judge raises other close questions under the

---

[4] Our holding coincides with prior Circuit practice. In 1979, the Second Circuit issued Guidelines Under the Speedy Trial Act, which specifically contemplated the exclusion of time for motion preparation:

> With respect to the motions [which the Court has determined require the filing of written papers], the time beginning with the date the Court determines that written papers are required and ending with the date of oral argument (or the due date of any post-argument submission) or, if there is to be no oral argument, the due date of the reply papers, is excluded as a proceeding concerning the defendant under § 3161(h)(1).

Guidelines Under the Speedy Trial Act 9-10 (1979). "While those guidelines do not have the force of law, they are entitled to appropriate respect." United States v. Todisco, 667 F.2d 255, 260 (2d Cir. 1981) (per curiam).

31

Speedy Trial Act.  Here, a report and recommendation on a dispositive motion caused pretrial delay that Oberoi contends should be counted on the speedy trial clock.  Two self-executing Speedy Trial Act provisions (discussed above) are relevant here.  Subsection (h)(1)(F) automatically stops the clock when a pretrial motion is first filed; and after the motion is fully briefed, subsection (h)(1)(J) automatically stops the clock for up to 30 days while the motion is "under advisement by the court."  18 U.S.C. § 3161(h)(1)(J).  These two subsections work in tandem: "Congress intended that the time between making the motion and finally submitting it to the court for decision be governed by (F), and that the time during which the court has the motion 'actually under advisement' be governed by (J)."  United States v. Cobb, 697 F.2d 38, 43 (2d Cir. 1982), abrogated on other grounds by Henderson v. United States, 476 U.S. 321 (1986).

When a pretrial motion is fully submitted to a magistrate judge, is the clock stopped (under subsection (h)(1)(J)) while the motion is "under advisement" of the magistrate judge?[5]  When a magistrate judge issues a report

---

[5] A subsidiary question (not raised by this appeal) is whether a magistrate judge and district court each enjoys an

and recommendation, is the pretrial motion effectively re-filed with the district court, thereby stopping the clock pursuant to subsection (h)(1)(F)? Or does the issuance of a report and recommendation restart the clock until a party files an objection? See 28 U.S.C. § 636(b)(1).

These questions are implicated by Oberoi's appeal and are open in this Circuit. The government did not brief these issues, aside from a (dubious) citation to Henderson v. United States, 476 U.S. 321, 326-27 (1986) (rejecting the argument that subsection (h)(1)(F) requires "that a period of delay" between the filing of and hearing on a motion be "reasonable").

---

automatic 30-day "advisement" period, or if they instead share the same 30 days. Compare United States v. Mora, 135 F.3d 1351, 1357 (10th Cir. 1998) ("Reading the authority granted to the district judge in the Magistrate's Act to refer pretrial matters to the magistrate together with the requirements of the Speedy Trial Act, the most appropriate manner in which to effectuate the purpose of both statutes is to give the magistrate and district judge a separate thirty-day period for having the matter under advisement."), and United States v. Mers, 701 F.2d 1321, 1336 (11th Cir. 1983) ("We reject [the] argument that the thirty day under advisement exclusion is a total for both the magistrate and the district court."), with United States v. Thomas, 788 F.2d 1250, 1257 (7th Cir. 1986) (amended op.) ("If both judge and magistrate have 30 days, then in an ordinary case, with nothing more complex than a request for discovery of Brady materials, 60 days of automatic exclusion would be added to the 70 days provided by the Speedy Trial Act. We doubt that Congress meant to afford an all-but-automatic doubling of the statutory time.").

Our sister circuits have considered these questions. A leading case is United States v. Long, 900 F.2d 1270 (8th Cir. 1990), which holds that once a pretrial motion has been fully briefed and submitted to a magistrate judge, subsection (h)(1)(J) gives the magistrate a 30-day "advisement" period in which to rule on the motion. Long, 900 F.2d at 1274-75. Then, "[t]he issuance of the report and recommendation [begins] a new excludable period under section 3161(h)(1)(F)." Id. at 1275. So,

> [t]he filing of the report and recommendation . . . in essence serves to re-file the motions, together with the magistrate's study of them, with the district court. Under section 3161(h)(1)(F), this filing tolls the 70-day count until the district court holds a hearing or has all the submissions it needs to rule on the motions.

Id. The Sixth Circuit subscribes to the Long approach, and in addition takes into account that the law gives parties ten days to file objections to a report and recommendation:

> [A] new period of excludable delay under subsection (F) begins immediately upon the filing of the magistrate's report and recommendation. That period of excludable delay lasts only until the parties file objections or the ten days allowed for filing objections elapse. At that point--when the district court has before it all the materials it is due to receive--a new period of excludable delay begins; viz., thirty days under subsection (J) within which a motion may be kept under advisement.

34

*United States v. Andress*, 943 F.2d 622, 626 (6th Cir. 1991). At least one other circuit follows *Long*. *See* *Mora*, 135 F.3d at 1356-57 (concurring that a "magistrate is subject to the thirty-day 'under advisement' period set forth in subsection (J)").

The Seventh and Eleventh Circuits take a slightly different tack: the issuance of a report and recommendation starts the clock; but the filing of objection automatically stops it. *See* *United States v. Thomas*, 788 F.2d 1250, 1257 (7th Cir. 1986) (amended op.) ("So . . . the clock started, just as it would have done if the judge rather than the magistrate had written the opinion. The difference is that the magistrate's recommendation was not final, which set the stage for a further exclusion if [the defendant] objected."). In other words, in the Seventh and Eleventh Circuits, the ten-day period for filing objections is not excluded automatically. *See* *United States v. Robinson*, 767 F.2d 765, 769 (11th Cir. 1985) (stating, without explanation, that after a magistrate issued a report and recommendation on October 5, 1982, "[s]ix nonexcludable days elapsed between October 6, 1982 and October 12, 1982, when [the defendant] filed objections to the magistrate's recommendation"). The Seventh Circuit reasoned that once

35

the magistrate judge issues a report and recommendation,

> [t]he motions [are] no longer under active consideration, not unless the defendant objected to the recommendations, which under the local rules he had ten days to do. These ten days are not automatically excluded; under Tibboel only time expressly granted by the court is excluded. Otherwise far too much time would be excluded, for in a sense every day that passes after the indictment is spent "preparing" things.

Thomas, 788 F.2d at 1257.

While this approach speeds things along, it seems to assume that a report and recommendation is a final disposition of a motion, rather than a document that "is automatically filed with the district court, which in turn is required to make a de novo determination on the issues to which a party objects." Long, 900 F.2d at 1275 n.3 (citing 28 U.S.C. § 636(b)(1)). Even if neither party files an objection to the report and recommendation, the motion itself is decided only after the district court rules. See Mers, 701 F.2d at 1337 ("The magistrate's report, however, cannot automatically become the order of the court merely because none of the parties object.").

In light of this consideration, we adopt the Long approach. When a pretrial motion is fully submitted to a magistrate judge, subsection (h)(1)(J) affords the

36

magistrate a 30-day "advisement" period in which to rule. The issuance of a report and recommendation automatically tolls the speedy trial clock under subsection (h)(1)(F) until ten days pass or objections are filed (whichever comes sooner). At that point, the complete package--the motion, report and recommendation, and any objections--is submitted to the district court. Whether that submission constitutes a fully-filed motion that automatically gives the district court a successive 30-day "advisement" period (see footnote 5, supra) is not, strictly speaking, an issue we need to resolve in this case, because by then Oberoi's speedy trial clock had been stopped by intervening events.

## C

With this understanding of the Speedy Trial Act, we turn to the 28 periods of delay cited by Oberoi, which are set out in the margin.[6] Many of these time periods are

---

[6] Oberoi cites the following post-indictment periods of delay (with his count on the speedy trial clock shown in parentheses):

> December 16 to December 22, 1999 (5 days)
> December 22, 1999 to January 19, 2000 (28 days)
> January 19 to February 23, 2000 (35 days)
>
> March 9 to March 15, 2000 (5 days)
> March 15 to April 12, 2000 (28 days)

consecutive; and some of Oberoi's arguments overlap from period to period, as do some events relevant to the speedy trial calculation.  In order to consider every plausible claim with regard to every time period arguably in issue,

---

April 12 to May 10, 2000 (28 days)
May 11 to June 28, 2000 (48 days)
June 28 to June 30, 2000 (2 days)
June 30 to July 31, 2000 (30 days)

November 7 to November 27, 2000 (10 days)

December 19 to December 20, 2000 (1 day)

December 20 to December 31, 2000 (10 days)
January 1 to January 11, 2001 (10 days)
January 11 to February 8, 2001 (28 days)

February 14 to March 8, 2001 (22 days)

August 2 to August 29, 2001 (27 days)
September 27 to October 12, 2001 (15 days)
October 12 to October 16, 2001 (3 days)

October 24 to November 1, 2001 (8 days)

February 13 to February 20, 2002 (7 days)
February 20 to February 24, 2002 (4 days)

March 21 to April 14, 2003 (22 days)

September 18 to October 22, 2003 (32 days)
October 22 to November 5, 2003 (14 days)
November 5 to November 17, 2003 (12 days)
November 17 to December 11, 2003 (27 days)
December 11 to December 19, 2003 (8 days)

January 6 to January 12, 2004 (6 days)

App. Br. at C.

our analysis is broken into the longer intervals set out below.

For each interval, the header records the number of days elapsed on the speedy trial clock. If any part of a day is excluded, the day is not counted. Moreover, "[w]hen counting days for Speedy Trial Act purposes, the actual filing date of the motion[] and the date of the court's disposition are excludable." United States v. Johnson, 29 F.3d 940, 943 n.4 (5th Cir. 1994). This accounting principle is widely accepted.[7]

---

[7] See United States v. Fonseca, 435 F.3d 369, 372 (D.C. Cir. 2006) ("[T]he period of exclusion begins on the day a pretrial motion is filed."); United States v. Daychild, 357 F.3d 1082, 1093 (9th Cir. 2004) (affirming position that "district courts are to 'calculate the 70-day period excluding the day the motion was filed and the day it was heard" (quoting United States v. Aviles, 170 F.3d 863, 869 (9th Cir. 1999)); Gov't of Virgin Islands v. Duberry, 923 F.2d 317, 320 n.8 (3d Cir. 1991) ("[W]e exclude the days on which the events occurred in making the 70-day calculation."); United States v. Jodoin, 672 F.2d 232, 237 n.7 (1st Cir. 1982) (Breyer, J.) ("[T]he Act states as to excludable days that both the day the motion is filed and the day it is disposed of shall be counted."); see also United States v. Nixon, 779 F.2d 126, 130 (2d Cir. 1985) (accepting defendant's concession that "the date on which pretrial motions were filed and decided[] is excludable"); Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974, As Amended, 106 F.R.D. 271, 289 (1984) (setting starting date of exclusion as "[d]ate the motion is filed or made orally" and the ending date as the "[d]ate on which the court has received everything it expects from the examiner and the

- **December 16, 1999 through December 22, 1999: Zero days**

The 70-day clock of the Speedy Trial Act begins to run from the date of indictment or "the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Oberoi first appeared in court for his arraignment on December 22, 1999. Therefore no time elapsed on his speedy trial clock between December 16 and December 22, 1999.

- **December 22, 1999 through February 23, 2000: Five days**

At the arraignment, Magistrate Judge Heckman set a schedule for pretrial motion practice, with oral argument to be held on March 3, 2000. She then stated, "Time will be excluded until that date." Magistrate Judge Heckman made no factual findings in support of that statement, nor did she specifically explain the basis for the exclusion of time. Because the exclusion of time was not expressly granted for

parties before reaching a decision--that is, the date as of which all anticipated briefs have been filed and any necessary hearing has been completed"). But see Thomas, 49 F.3d at 256 ("It is the law in this circuit that only actual days elapsed between the filing of the motion and its disposition are counted.").

40

the preparation of pretrial motions, Oberoi's speedy trial clock began to run on December 23, 1999.

Five days later, the clock stopped. On December 28, 1999, Magistrate Judge Heckman entered an order directing the parties to file pretrial motions by February 23, 2000 (with responses due March 3, 2000). The order scheduled oral argument on the motions for March 10, 2000. Citing this Circuit's Speedy Trial Guidelines, Tibboel, and Jodoin, Magistrate Judge Heckman stated that "the period of time from the date of this order until the date of oral argument is excluded under 18 U.S.C. § 3161(h)(1)(F)." Docket Entry #6. Neither party objected to the scheduling order.

Subsection (h)(1)(F) applies when motions are filed, not while they are being prepared. Thus Magistrate Judge Heckman's citation does not meet the formal requisites of Zedner. But no interest protected by the Speedy Trial Act (and emphasized in Zedner) was disserved by the judge's addition of an unnecessary reference to the sub-sub-subsection of the sub-subsection that justifies the delay. The public interest in a speedy trial is unimpaired, and the time limits set in the Speedy Trial Act are not exceeded. In any event, the decision "must be affirmed if the result is correct 'although the lower court relied upon a wrong

41

ground or gave a wrong reason.'" SEC v. Chenery Corp., 318 U.S. 80, 88 (1943) (quoting Helvering v. Gowran, 302 U.S. 238, 245 (1937)); cf. United States v. Hammad, 902 F.2d 1062, 1064 (2d Cir. 1990). The order stopped the speedy trial clock on December 28, 1999.

Some weeks later, the clock was stopped for a second, independent reason: on February 11, 2000, the government filed a motion to revoke bail. See 18 U.S.C. § 3161(h)(1)(F).

• **March 9, 2000 through May 10, 2000: Ten days**

Magistrate Judge Heckman orally granted the government's bail revocation motion at a hearing on March 9, 2000. At some point thereafter, Oberoi (through counsel) moved for reconsideration of Magistrate Judge Heckman's decision. The motion was never docketed in the district court, and so we have no way of knowing when (or how) the motion was filed. But on March 15, 2000, Magistrate Judge Heckman held a second bail hearing, and ruled for Oberoi. The transcript of the March 15 hearing is not in the record on appeal, and the docket sheet does not reveal whether Magistrate Judge Heckman stopped the speedy trial clock at the hearing.

On March 20, 2000, Magistrate Judge Heckman entered a

second scheduling order, which directed the parties to file pretrial motions by May 10, 2000 (with responses due May 31, 2000) and scheduled oral argument on the motions for June 7, 2000. Again citing Tibboel and Jodoin, the magistrate excluded time from the date of the order (March 20) through the date set for oral argument (June 7) pursuant to 18 U.S.C. § 3161(h)(1)(F), and advised that if no motions were filed by May 10, 2000, the speedy trial clock would begin to run on that date.

Given the gaps in the record on appeal, we cannot determine how much time elapsed on the speedy trial clock between the March 9 bail revocation hearing and the March 20 scheduling order. But in no event was it more than ten days.

- **May 11, 2000 through July 31, 2000: Twenty days**

The parties filed no motions by the May 10 deadline. At a conference the following day, Magistrate Judge Heckman orally granted Oberoi's motion for additional time to prepare motions. The transcript of the conference is missing from the record on appeal; the docket does not suggest any exclusion of time. Accordingly, the speedy trial clock ran for one day: May 11, 2000.

On May 12, 2000, Magistrate Judge Heckman issued a

43

third scheduling order directing the parties to file pretrial motions by June 28, 2000 (with responses due July 19, 2000) and set oral argument for July 26, 2000. Magistrate Judge Heckman again excluded time pursuant to 18 U.S.C. § 3161(h)(1)(F).

On June 1, 2000, Oberoi's case was referred to Magistrate Judge H. Kenneth Schroeder.

The parties missed the June 28 filing deadline. That day, Oberoi's defense counsel wrote to Magistrate Judge Schroeder seeking another extension. The letter made no reference to a Speedy Trial Act exclusion. On June 30, Magistrate Judge Schroeder granted the extension by memo endorsement, which also made no reference to a Speedy Trial Act exclusion. As a consequence, the clock began to run on June 29, 2000.

Nineteen days elapsed. On July 18, 2000, Magistrate Judge Schroeder directed the parties to file pretrial motions by July 31, 2000 and responses by August 14, 2000, and set oral argument for August 23, 2000. As was Magistrate Judge Heckman's practice, Magistrate Judge Schroeder excluded the time from the date of the order (July 18) through the date set for oral argument (August 28) pursuant to 18 U.S.C. § 3161(h)(1)(F). Docket Entry # 29.

44

For the same reasons stated above, the order stopped the clock.

- **July 31, 2000 through December 20, 2000: Ten days**

Oberoi filed pretrial motions on July 31, 2000, which automatically stopped the clock until October 18, 2000, when Magistrate Judge Schroeder held a hearing on the motions (which were by then fully briefed).  18 U.S.C. § 3161(h)(1)(F).  The clock then stopped automatically for 30 days, until November 17, 2000, while the motions were under the advisement of the magistrate.  18 U.S.C. § 3161(h)(1)(J); see also Long, 900 F.2d at 1275 ("We see no reason to exempt magistrates from the statutory limit of 30 excludable days for taking a motion under advisement after receiving all materials needed to decide it.").

The motions were not decided within 30 days, and so Oberoi's speedy trial clock began to run on November 18.  Nine days elapsed.  On November 27, Magistrate Judge Schroeder issued an order extending the advisement period for thirty days, until December 18, 2000, in the interests of justice.  See 18 U.S.C. § 3161(h)(8)(A).

Magistrate Judge Schroeder issued his report and recommendation on the motions on December 20, 2000, adding one day of delay (December 19), making ten days for the

45

period, and a running total of 45 days.

• **December 21, 2000 through July 16, 2002: Zero days**

The issuance of Magistrate Judge Schroeder's report and recommendation effectively re-filed the motions in the district court, and therefore automatically tolled the speedy trial clock under subsection (h)(1)(F). See Andress, 943 F.2d at 626 ("[A] new period of excludable delay under subsection (F) begins immediately upon the filing of the magistrate's report and recommendation.").

On January 11, 2001, Oberoi's counsel requested an extension to file objections. He stated that he received the report and recommendation on December 27, 2000, which (excluding holidays and weekends) set the due date for objections on January 11--the day the extension was sought. See 28 U.S.C. § 636(b)(1) (providing that objections are due "[w]ithin ten days after being served with a copy" of a report and recommendation). On January 12, 2001, the district court entered an order giving defense counsel until February 8, 2001 to file objections. The speedy trial clock remained stopped pursuant to subsection (h)(1)(F), because the motion was not fully briefed. See Henderson, 476 U.S. at 331 (1986) ("The provisions of the Act are designed to exclude all time that is consumed in placing the trial court

46

in a position to dispose of a motion.").

The filing of objections was overtaken by other procedural events.  On February 5, 2001, the government filed a motion to revoke bail, which automatically tolled the speedy trial clock.  Numerous bail revocation hearings were held.  In the meantime, on May 22, 2001, the government filed a motion relating to discovery, which also automatically stopped the speedy trial clock.  Oberoi did not respond.  The government renewed the motion over a year later (on June 25, 2002).  Oberoi never responded.  Finally, at a hearing on July 16, 2002, the district court ruled on the motion.  Subsection 3161(h)(1)(F) "exclude[s] all time between the filing of and the hearing on a motion whether that hearing was prompt or not."  Henderson, 476 U.S. at 326.  Notwithstanding that it was pending for nearly fourteen months, the government's May 22, 2001 discovery motion stopped the clock through July 16, 2002.  Cf. United States v. Bufalino, 683 F.2d 639, 646 (2d Cir. 1982) (opining "that [the defendant], when faced with a government motion, had a duty to do more than stand by without taking a position and then reap the benefit of inaction by having the indictment dismissed on speedy trial grounds" because otherwise "neither the court nor its clerk's office will

47

ever know when the 'under advisement' period of subsection (J) begins to run").

- **March 21, 2003 through April 14, 2003: Zero days**

This period was properly excluded by the district court in the interests of justice, pursuant to 18 U.S.C. § 3161(h)(8)(A).  At a pretrial conference on March 21, 2003, the district court found, and the parties agreed, that the time leading up to the next scheduled pretrial conference on April 11, 2003 should be excluded in the interests of justice in order to allow defense counsel to consult with his client and the government.  18 U.S.C. § 3161(h)(8)(A). At the April 11 pretrial conference, the parties requested another continuance, to May 6, 2003.  The district court again excluded time in the interests of justice, making the requisite factual findings on the record.  Id.  Neither party objected to the exclusion.  The district court documented these rulings in a speedy trial order issued on April 14, 2003.

- **September 18, 2003 through December 11, 2003: Zero days**

Between June 18 and November 14, 2003, the clock was automatically stopped while Oberoi was examined by various physicians, first to determine his physical capacity and then to determine his mental competency.  18 U.S.C. §

48

3161(h)(1)(A). Meanwhile, on June 20, 2003 (while the competency proceedings were pending), Oberoi filed his motion to dismiss on Speedy Trial Act grounds, which automatically stopped the clock through December 11, 2003, when the district court denied the motion. 18 U.S.C. § 3161(h)(1)(F).

- **December 12, 2003 through December 19, 2003 and January 6, 2004 through January 12, 2004: Twelve days**

Oberoi challenges these intervals on appeal, but did not cite them in the district court. The Speedy Trial Act provides that "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2). Even if Oberoi had raised these periods of delay, they would constitute only twelve additional days on the clock. Combined with the periods listed above, only 57 days could be counted on his speedy trial clock--fewer than the 70 allowed by the Act. Accordingly, Oberoi's claim is rejected.


**III**

Oberoi contends that his plea was invalid because the

49

district court refused to appoint new defense counsel. Oberoi did not raise this claim in the district court, and so we review for plain error. United States v. Glen, 418 F.3d 181, 184 (2d Cir. 2005).

A criminal defendant "has a constitutional right to waive the right to assistance of counsel and present [his] own defense pro se, if the decision is made 'knowingly and intelligently.'" Clark v. Perez, 510 F.3d 382, 394-95 (2d Cir. 2008) (quoting Faretta v. California, 422 U.S. 806, 835 (1975)). A defendant who intends to waive his right to counsel "need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation." Faretta, 422 U.S. at 835. Nonetheless, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Id. (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 280 (1942)). We have advised:

> To ensure the waiver is knowing and intelligent, a trial court should engage the defendant in an on-the-record colloquy. From defendant's answers and from its own observations, the trial court must be persuaded that the waiver is a rational one, and that defendant has the mental capacity to

50

comprehend the consequences of relinquishing a constitutional right.

United States v. Schmidt, 105 F.3d 82, 88 (2d Cir. 1997).

In Schmidt, we rejected the defendant's claim that "she was coerced into self-representation because the district court, on the eve of trial, refused to replace her third court-appointed attorney." Id. at 89. As a general matter, a district court "may not compel defendant to proceed with incompetent counsel." Id. But "[b]ecause the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of defendant's choosing." Id. And "[o]n the eve of trial, just as during trial, a defendant can only substitute new counsel when unusual circumstances are found to exist, such as a complete breakdown of communication or an irreconcilable conflict." Id. at 89.

Oberoi's challenge fails. The day before trial--after his case had been pending for nearly four years--Oberoi told the district court that he was dissatisfied with John Molloy, his seventh defense attorney. The district court advised Oberoi that Molloy was "a competent, capable, prepared lawyer," who had been working on the defense for over four months. Cf. id. at 89 (explaining that a district

51

court "may not compel defendant to proceed with incompetent counsel"). The district court told Oberoi he could proceed with Molloy as his counsel or appear pro se, and then warned Oberoi about the risks of self-representation, including the layman's lack of familiarity with the rules of evidence and criminal procedure, court practices, and sentencing. The following day, the day trial was to begin, Oberoi again requested new counsel. After the district court denied that request, Oberoi declared his intention to represent himself. The district court found that Oberoi waived his right to counsel knowingly and voluntarily, and directed Molloy to appear as stand-by counsel. Having reviewed the extensive colloquy conducted by the district court, we see no reason to disturb that ruling.

Nor do we see any reason to disturb the district court's finding that Oberoi's guilty plea was knowing and voluntary. The plea allocution conformed to Federal Rule of Criminal Procedure 11. The district court engaged Oberoi in a lengthy dialogue to determine the factual predicate for the plea. Oberoi stated that, "these two counts I am totally guilty." When the district court inquired into Oberoi's competence, Oberoi stated that he was "perfectly capable," and felt "absolutely all right" to plead guilty.

Later, Oberoi assured the court, "No sir, nobody has forced me to plead guilty. Absolutely." Oberoi affirmed that he understood the consequences of pleading guilty and the rights he was giving up in not going to trial. The district court accepted the plea, finding that Oberoi was "fully competent and capable of entering an informed plea," and that the plea was knowing, voluntary and supported by an independent basis in fact. "The district court is entitled to accept a defendant's statements under oath at a plea allocution as true." United States v. Maher, 108 F.3d 1513, 1521 (2d Cir. 1997). Having considered the record as a whole, we see no merit in Oberoi's claim that his guilty plea was coerced.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of conviction.

53